MILLER ET AL., ETC., ET AL. *v.* COLES

[No. 27, September Term, 1963.]

524

Decided November 5, 1963.

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Charles R. Goldsborough, Jr., Special Attorney,* with whom were *Thomas B. Finan, Attorney General, J. Howard Holzer, Special Assistant Attorney General,* and *J. Raymond Buffington, Jr., Special Attorney,* on the brief, for the appellants.

*Alfred M. Porth,* with whom were *Milton B. Allen, Robert E. Cadigan* and *Brown, Allen & Watts* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

The appellants, employer and insurer, appeal from a judgment entered in the Baltimore City Court upon the finding of a jury that the claimant-appellee, Charles A. Coles, sustained an accidental personal injury arising out of and in the course of his employment. The Workmen's Compensation Commission, by its order dated July 31, 1959, found that the claimant did not sustain an accidental injury arising out of and in the course of his employment and, accordingly, disallowed his

claim. Thereafter, the claimant filed a motion for re-hearing, which was granted. The Commission, by its subsequent order, dated November 3, 1959, affirmed its previous order of July 31, and thereby again disallowed the claim.

From these two adverse decisions of the Commission, the claimant appealed to the Baltimore City Court. At the conclusion of the testimony in the trial, the appellants moved for a directed verdict, which was denied. The jury, in answering the sole issue submitted to them, found in favor of the claimant.

The appellants' motion for judgment n.o.v. was also denied, whereupon the lower court reversed the two decisions of the Commission, and entered judgment in favor of the claimant.

The claimant was employed six days a week as an outdoor salesman by Central Home Furnishings, one of the appellants. His duties consisted of soliciting orders and new accounts and selling on cash or credit terms such various and sundry items as furniture, general household articles, clothing and even groceries. He was furnished an automobile from which he displayed to prospective customers the merchandise for sale, and in which he stored the wares. While his usual door-to-door promotion was in residential areas, the claimant testified that he "went from door to door, saloons, bar rooms, night clubs, gas stations, anywhere I could make a sale * * *."

At approximately 1:15 a. m. on April 28, 1956, Coles parked his employer's car at the side entrance to the Clover Club and went across the street to a sandwich carry-out shop called Big Bill's, where he had a cup of coffee and a submarine sandwich. After thus fortifying himself, he went back across the street and entered the Clover Club. He testified that he had an appointment, made he knew not how, to "meet this lady" whose name he did not know, for the purpose of making a sale (which was never consummated, for apparently the appointee did not appear). No other business was transacted in the bar by claimant. However, he had not given up hope that his customer would appear. A few minutes before the 2 a. m. closing time, though the testimony is in conflict as to the exact sequence of events, it appears that the claimant was asked by the club's floor manager, James Wilson (also known as "Beau Jack"), to leave. It was Wilson's duty at closing time to clean out the rest rooms,

douse the lights, and ask (or assist, if necessary) customers to vacate the premises.

Coles testified he went up to the proprietor to secure permission to remain a few minutes after closing in hopes the prospective customer would arrive. The owner acknowledged that he "may have" given the claimant permission to stay. Whatever the exact nature of the exchange between them, it was interrupted by Wilson, who grabbed claimant by the arm to escort him out of the club. There followed what the claimant carefully chooses to call a misunderstanding between these strangers in which Coles was knocked down and beaten and "Beau Jack" was bitten on the cheek. Claimant dashed across the street to Big Bill's to ask to be taken to a hospital. In answer to this request he was taken outside and shown the way to Johns Hopkins Hospital. After a brief interval, "Beau Jack" appeared and the fight was renewed, resulting in claimant being left unconscious. An ambulance was called for him, and "Beau Jack" went home.

Once again we are called upon to construe Code (1957), Article 101, § 15 of the Workmen's Compensation Act. The action was tried below and the parties have presented the case to us on the basis that the injury must arise not only "in the course of" but also "out of" the employment in order for a claimant to recover benefits under the Act. Claimant does not contend, as was done in *Md. Paper Products Co. v. Judson,* 215 Md. 577, 589, 139 A. 2d 219, that Section 67 (6) of Article 101, Code (1957) (then Section 68 (6) of Article 101, Code (1951)) (as amended by Ch. 289 of the Acts of 1951) allows compensation for injuries inflicted upon an employee by a third party while the employee is in the course of his employment, without prescribing that the injury also arises out of his employment. As in that case, we are not called upon to pass upon the merit of such a proposition, for we do not think that Coles was acting in the course of his employment when assaulted and beaten.

The words "in the course of" refer to the time, place, and circumstances under which an injury occurred. *Hill v. Liberty Motors,* 185 Md. 596, 605, 45 A. 2d 467. We defined an in-

jury arising "in the course of" employment in *Consol. Engineering Co. v. Feikin,* 188 Md. 420, 425, 52 A. 2d 913, as one which "occurs while the workman is doing the duty which he is employed to perform." In *Watson v. Grimm,* 200 Md. 461, 466-467, 90 A. 2d 180, in further considering the phrase we said:

> "So it is generally held that an injury arises 'in the course of employment' when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incident thereto. (Citing cases). In considering the question whether an employee's injury arose in the course of his employment, one or more of the following questions may be considered: When did the period of employment begin? When did it end? When was its continuity broken? How far did the employee, during the period of employment, place himself outside the employment?"

In our determination of whether the evidence permits a finding that the employee suffered an injury in the course of his work, we apply the familiar rule that where there is any evidence from which a rational conclusion to support the claim may be drawn, the weight and value of that evidence must be left to the trier of the facts. *Stancliff v. H. B. Davis Co.,* 208 Md. 191, 117 A. 2d 577. Applying this principal to the facts of the present case, we think that Coles, as a matter of law, was not in the course of his employment when beaten by "Beau Jack".

Claimant argued that he was in no way limited to the hours he worked or the places he visited, and that while he may not have been required to conduct business as he did, nevertheless he was not prohibited from doing so. We think the answer to this comes from the employer himself. That he thought it not necessary to give claimant instructions not to sell at this late hour is apparent from his testimony that: "we wouldn't dream of his working at that hour in the night * * *." The employer further testified that his own understanding of the hours which

the claimant was supposed to work were from nine to five, or nine to six if he had an appointment. We do not think the injury arose within a period of time contemplated in the employment agreement.

The injury was due to an assault by a third party. Coles was jostled and subsequently beaten for his failure to leave the Clover Club at closing time. To "Beau Jack" he was merely one uncooperative patron who refused to abide by the tavern's closing time of 2:00 a. m. This, we think, is the fair import of the testimony of both "Beau Jack" and Coles. It is unreasonable to suppose that this fight followed as a natural incident of claimant's work as a household equipment salesman. Rather the fight was incident to his being evicted, and was not in the course of his employment.

Even if we were to assume that claimant had a valid appointment and was in the course of his employment when he first entered the Clover Club, nevertheless it seems clear that the continuity of the employment was broken and had come to an end by the time of the events immediately leading up to the injury. What Coles could have hoped to gain by staying past closing time goes unanswered. Surely he realized, or as a reasonable man should have, that the prospective unidentified customer would not be admitted into the tavern after it closed. He could have taken no order, made no sale, or delivered no merchandise in the Clover Club as of the time of the fight which caused his injuries.

For the reasons herein stated we conclude that the lower court erred in not granting appellants' motion for a directed verdict.

> *Judgment reversed and order of Workmen's Compensation Commission reinstated. Costs to be paid by appellee.*