811 A.2d 845

APPLIED INDUSTRIAL TECHNOLOGIES, et al.,

v.

Kevin R. LUDEMANN.

No. 1673, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Dec. 2, 2002.

Joel E. Ogden (Anthony J. Zaccagnini and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellants.

Lawrence Melfa (Samuel M. Grant and Howard, Butler & Melfa, P.A., on the brief), Towson, for appellee.

Argued before JAMES R. EYLER, BARBERA, and JOHN J. BISHOP, (Retired, specially assigned), JJ.

BARBERA, Judge.

The principal issue we decide in this appeal is whether the date of a work-related accident must be identified with certainty in order for an employee to recover benefits under the Workers' Compensation Act. We hold that such certainty is not required. We also decide the propriety of the court's denial of a mid-trial continuance request that came in the midst of a tragic national occurrence—the September 11, 2001 terrorist attack upon our country. We hold that the judge exercised proper discretion in denying a continuance and thereby allowing the jury, as it had requested, to deliberate and render its verdict.

This appeal stems from the decision of a Baltimore County jury on review of two orders of the Workers' Compensation Commission ("the Commission") denying benefits to appellee, Kevin R. Ludemann ("Claimant"). Claimant had sustained accidental injuries to his back on two occasions arising out of and during the course of his employment.

Appellee's employer, Applied Industrial Technologies, and its insurer, Pacific Employers Insurance Company, which we collectively refer to as "Applied Industrial," noted this appeal. Applied Industrial presents the following questions:

I. Did the circuit court err in allowing Claimant to amend the dates of his alleged accidents at trial?

II. Was the verdict sheet flawed in that it failed to specify the dates of the alleged work-related incidents, and in describing the allegedly work-related incidents as "accidents?"

III. Did the circuit court err in permitting the jury to deliberate and render a verdict in light of the tragic events of September 11, 2001?

For the reasons that follow, we affirm.

## FACTS AND PROCEEDINGS

The evidence offered at trial disclosed that Claimant began working for Applied Industrial or its subsidiary, Dees Fluid and Power, upon his graduation from high school approximately twenty-nine years earlier.[1] For the last eleven of those years, he has worked as a service center manager and as a mechanic.

For several years, Claimant has been authorized to complete piecework projects in his home for one of Applied Industrial's clients, B. Stuart Bauer. Claimant testified at trial that, in October 1998, while performing one of these projects in his home, he injured his back in attempting to place two boxes on the floor. The combined weight of the boxes was approximately seventy-five pounds. Claimant did not immediately seek medical treatment. A few days later, however, he sought treatment from his family physician, Bradford L. Ebright, M.D.

Dr. Ebright opined that Claimant was suffering from either a muscle spasm, muscle sprain, or pinched nerve, and recom-

---

1. Dees Fluid and Power was purchased by Applied Industrial Technologies in December 1995.

mended physical therapy. After two physical therapy visits, Claimant was referred by Dr. Ebright to Kenneth J. Murray, M.D., a neurosurgeon.

Dr. Murray treated Claimant with medication and recommended bed rest. Following this visit, Claimant informed Dr. Murray that his condition was much improved. Approximately five months after the accident, Claimant was released from the care of Dr. Murray.

In November 1999, thirteen months after the first injury, Claimant again injured his back. He testified that while working on Applied Industrial's property, he lost his footing on the oily floor and fell onto his left side. Claimant again was treated by Dr. Murray. After some time passed, Dr. Murray, in consultation with other surgeons, recommended that Claimant undergo surgery to alleviate the pain and pressure in his back. Claimant underwent two surgeries to his back, the first occurring in May 2000 and the second in November 2000. He eventually returned to work, but was restricted to light duty and limited lifting.

On June 12, 2000, approximately one month after his first surgery, Claimant filed two claims for workers' compensation benefits. Claimant listed October 18, 1998 and November 5, 1999 as the accidental injury dates. On November 3, 2000, the Commission held an evidentiary hearing on both claims. At the hearing, Claimant admitted that he was unsure of the exact date of the October injury, and "use[d] the 18th [of October] as a nearest point of recollection."

Claimant's counsel then informed the Commission that Claimant wished to amend his claim to state that the injury occurred on October 16, 1998. Applied Industrial promptly objected. The Commission implicitly denied the amendment request, stating: "I'm not that worried about the date of the accident. I'm more concerned about the merits and the substance of the case. I don't know that the date is a big issue."

Five days later, the Commission issued its orders denying both claims. The orders are identically worded save for the

claim numbers, dates alleged in the separate claims, and Claimant's average weekly wage at the relevant times. The orders state:

Hearing was held in the above claim at Baltimore, Maryland on November 3, 2000 on the following issue:

Did the employee sustain an accidental personal injury arising out of and in the course of employment?

The Commission finds on the issue presented that the claimant did not sustain an accidental injury arising out of and in the course of employment as alleged to have occurred on [October 18, 1998] [November 5, 1999]; and the Commission has concluded to disallow the claim filed herein. Average weekly wage—[$953.35] [$1000.34].

It is, therefore, this 8th day of NOVEMBER, 2000 by the Workers' Compensation Commission ORDERED that the claim filed in the above case by the above-named claimant, against the above-named employer and the above-named insurer, be and the same is hereby disallowed.

Claimant thereafter petitioned the Circuit Court for Baltimore County for judicial review of the two Commission rulings. The case came on for a jury trial on September 10, 2001, and concluded with a verdict the next day. At trial, Claimant challenged the Commission's decision, contending that on both occasions he suffered an accidental injury in and during the course of his employment.

Claimant testified, much as he had at the Commission hearing, that he "gave the best date that [he] knew of" regarding the dates on which the accidents occurred. He now believed, however, that the first accident occurred on October 8, 1998, not October 18th as the benefits claim form stated, or October 16th as was his testimony before the Commission. Claimant explained that he was eventually able to identify the injury as having occurred on October 8th by calculating back from the dates on which he visited the doctor and recalling that he was not at work on October 18th, per his doctor's advice.

Claimant testified that the second accident occurred on November 8, 1999, and not on November 5th as he had stated

on the claim form. Claimant explained this date adjustment by recalling that he had substantially completed a "pump rebuild" for a client on a Friday, leaving the weekend for continued work if necessary. The following Monday morning, November 8th, he was injured while testing that pump.

At the close of Claimant's case, Applied Industrial made a motion for judgment. Applied Industrial argued that because Claimant was unable to establish the specific dates of the alleged accidental injuries, judgment should be entered in Applied Industrial's favor. In opposition, Claimant argued that the record reflected his acknowledgment of a date discrepancy and, inasmuch as the Commission had stated that it was not concerned with the inexactness of the accident dates, the motion for judgment should be denied. The court denied the motion, agreeing with Claimant that inconsistent dates were "not the thrust of the Work[ers'] Comp's decision." The court further stated: "I'm not worrying about the dates. [The Commission's] concern was whether or not there was an accidental injury . . . which is the same question that the jury has."

At the close of all the evidence, Applied Industrial renewed its motion for judgment, arguing the same grounds as before. The court denied this motion, reiterating that "the issue is did the employee sustain an accidental personal injury arising out of and in the course of [his] employment, and the question is whether it was, whether that occurred on two different days. And, in other words, it's, it's putting form before substance."

In light of the tragic events occurring that day (September 11, 2001) in the Washington D.C. area, New York, and Pennsylvania, the court, after an off-the-record discussion, polled the six-member jury concerning whether it wished to hear instructions and closing arguments by counsel, and begin deliberating.[2] All six jurors indicated their desire to continue with the proceedings.

---

2. Earlier that morning, terrorists had hijacked four United States commercial jet airliners. Two of the airliners were flown into the

After the court completed its instructions, Applied Industrial objected to the verdict sheet, arguing that it was prejudicial to Applied Industrial because it left "wide open" whether Claimant had an accidental injury at any time during any given month. The verdict sheet read:

1. Was the Workers' Compensation Commission correct in its orders that the Claimant did not suffer an accidental injury arising out of and in the course of his employment?

A.  First accident: yes_____ no_____

B.  Second accident: yes_____ no_____

Before the court ruled on this objection, Applied Industrial also objected, for the first time, to the court's decision allowing the jury to begin deliberating. Counsel stated: "I believe in light of the circumstances that are going on in the country right now ... this could be a rush to judgment." The court overruled both objections, and closing arguments commenced.

The jury retired and, nearly an hour later, returned with a verdict. Before the court clerk called for the verdict, the court made part of the record a message signed by all of the jurors, which read:

The jury's decision to move forward reflects our determination in view of today's tragic events to carry out the business with which we are charged. We intend to do that with deliberate and careful attention in the interest of fairness to all the parties.

The jury foreman then read the verdict, finding that the Commission was not correct in determining that Claimant had

World Trade Center Towers in New York City, killing thousands of people in the crashes and subsequent collapse of the twin towers. The third airliner was flown into the Pentagon in Arlington, Virginia, killing everyone aboard the airliner and others in the building. The fourth airliner crashed into a field in western Pennsylvania when passengers attempted to wrest control of the airliner from the hijackers. Everyone aboard died. It is believed that the hijackers had intended to crash this airliner into a government building in Washington, D.C.

not suffered two accidental injuries arising out of and during the course of his employment. This appeal followed.[3]

### DISCUSSION

Before reaching the specific issues presented in this case, we briefly summarize the means by which judicial review of a Commission decision is obtained. A party aggrieved by a decision of the Commission may appeal to the circuit court. Md.Code (1991, 1999 Repl.Vol., 2002 Cum.Supp.), § 9–737 of the Labor and Employment Article ("LE"). The General Assembly has set forth in LE § 9–745 the procedure for conducting appellate proceedings in the circuit court. There are "two alternative modalities" that an appeal from the Commission may take. *S.B. Thomas, Inc. v. Thompson*, 114 Md.App. 357, 364, 689 A.2d 1301 (1997).

> One is pursuant to Labor and Employment Art. § 9–745(e), which replicates the routine appeal process from administrative agency decisions generally. According to that modality, the circuit court reviews the Commission's action on the record and determines whether the Commission 1) acted within its power and 2) correctly construed the law and facts.
>
> The other and more unusual modality is that spelled out by § 9–745(d), which provides for what is essentially a trial *de novo*.

*Id.* A trial that is essentially *de novo* is unlike the procedure applicable to many other administrative law bodies, where appeal to the circuit court is usually determined on the record made at the agency hearing. *General Motors Corp. v. Bark*, 79 Md.App. 68, 88–89, 555 A.2d 542 (1989). At trial, the parties may rely on the same or different evidence than was presented to the Commission. *Id.* at 81, 555 A.2d 542. At the

---

**3.** By order dated September 12, 2002, this Court remanded the case to the circuit court for entry of a final judgment as required by Maryland Rule 2–601. That order was entered on October 11, 2002, and, pursuant to Maryland Rule 8–602(d), the notice of appeal has been treated as filed on the same day as, but after, the entry of judgment on the docket.

same time, the Commission's decision is not treated as if it had never occurred. "It is, rather, the case that the presumptively correct outcome of that adjudication is admissible as an item of evidence and is the proper subject of a jury instruction." *S.B. Thomas, Inc.,* 114 Md.App. at 366, 689 A.2d 1301 (citing *Holman v. Kelly Catering, Inc.,* 334 Md. 480, 486–87, 639 A.2d 701 (1994)).

The Court of Appeals long ago described the appellate court's standard of review of these essentially *de novo* trials: *Talley v. Dept. of Correction,* 230 Md. 22, 29, 185 A.2d 352 (1962).

With this legal framework in mind, we turn to the case *sub judice.*

## I.

We first address the circuit court's denial of Applied Industrial's motion for judgment. Applied Industrial's argument is premised on the fact that Claimant's trial testimony concerning the dates of his two injuries varied not only from his testimony before the Commission, but from the dates identified in his benefits claims. More specifically, Applied Industrial argues that: (1) in failing to identify the specific dates of the accidents, Claimant did not meet his burden of proving that he sustained an accidental injury in the course of employment; (2) Claimant was required to raise the "new" dates of the accidents before the Commission and, not having done so, was precluded from presenting them to the jury; (3) Claimant's failure to specify particular accident dates prejudiced Applied Industrial's "right to investigate"; and (4) allowing Claimant to receive workers' compensation benefits without identifying the specific accident dates leaves the benefit system open to fraud and abuse.

Under the Workers' Compensation Act ("the Act"), a compensable "[a]ccidental personal injury" includes "an accidental injury that arises out of and in the course of employment." Md.Code (1991, 1999 Repl.Vol.), § 9–101(b)(1) of the Labor and Employment Article. If an employee incurs an accidental

injury, then his employer must provide compensation for the injury pursuant to LE § 9–501.[4]

The mere occurrence of an accident does not suffice for workers' compensation benefits. *Montgomery County v. Wade*, 345 Md. 1, 9, 690 A.2d 990 (1997). Rather, the Act compensates "only those injuries that are occupationally-related, and not those perils common to all mankind or to which the public is generally exposed." *Id.* Accordingly, "[w]hen a claimant seeks compensation for an accidental personal injury under LE §§ 9–101(b)(1) and 9–501, he or she must demonstrate that it both arose out of *and* in the course of the employment. These two conditions precedent are not synonymous; both must be proven in order to bring the claim within the operation of the Act." *Id.* (Footnote omitted.)

Applied Industrial does not contest that Claimant's accidental injury arose out of his employment, nor does Applied Industrial attack, as such, the sufficiency of the evidence that Claimant's injury occurred in the course of employment. The attack is more specific, and is grounded on the argument that an accidental injury is compensable *only* when the exact accident date is known and has been proven.

As support for this position, Applied Industrial relies on *Miller v. Coles*, 232 Md. 522, 194 A.2d 614 (1963). There, the

---

4. That statute provides:

(a)*In general.*—Except as otherwise provided, each employer of a covered employee shall provide compensation in accordance with this title to:

(1) the covered employee for an accidental personal injury sustained by the covered employee; or

(2) the dependents of the covered employee for death of the covered employee:

(i) resulting from an accidental personal injury sustained by the covered employee; and (ii) occurring within 7 years after the date of the accidental personal injury.

(b) *Employer liable regardless of fault.*—An employer is liable to provide compensation in accordance with subsection (a) of this section, regardless of fault as to a cause of the accidental personal injury.

Md.Code (1991, 1999 Repl.Vol.), § 9–501 of the Labor and Employment Article.

Court of Appeals was called upon to determine whether an accidental injury arose out of and in the course of employment. In deciding the issue, the Court stated that the phrase "in the course of" refers to the "'time, place, and circumstances under which an injury occurred.'" *Id.* at 526, 194 A.2d 614 (quoting *Hill v. Liberty Motor & Engineering Corp.,* 185 Md. 596, 605, 45 A.2d 467 (1946)). This statement is certainly correct. But we do not see how it suggests that proof of the exact date of the accidental injury is required for the injury to be compensable, as Applied Industrial contends.

To the contrary, the case law clarifies that the "time, place and circumstances of the accident in relation to employment" requires simply "'that the injury be shown to have arisen *within the time and space boundaries of the employment,* and in the course of an activity whose purpose is related to the employment.'" *Wade,* 345 Md. at 11, 690 A.2d 990 (quoting 1 ARTHUR LARSON & LEX K. LARSON, WORKERS' COMPENSATION LAW § 14.00 (1996) (current § 12.01) (2002)). "An injury arises 'in the course of employment' when it occurs: (1) within the period of employment, (2) at a place where the employee reasonably may be in the performance of his duties, and (3) while he is fulfilling those duties or engaged in doing something incident thereto." *Montgomery County v. Smith,* 144 Md.App. 548, 558, 799 A.2d 406 (2002); *see also Knoche v. Cox,* 282 Md. 447, 454, 385 A.2d 1179 (1978). Said differently, "an injury is in the course of employment when it occurs during the period of employment at a place where the employee reasonably may be." *Wade,* 345 Md. at 11, 690 A.2d 990.

To be sure, a claimant's ability to prove the occurrence of an accidental injury may be made more difficult by either the claimant's inability to identify the exact date on which an alleged accidental injury occurred, or a variance between the date alleged in the claim and either the claimant's subsequent testimony or other evidence offered. But this is not to say that proof of an accidental injury necessitates proof of the date on which that injury occurred.

"In pleadings under a compensation act, calling things by wrong names, or bringing a petition under a wrong title, or making other harmless mistakes as to details such as dates, are immaterial if the intention of the pleading is clear." 7 ARTHUR LARSON & LEX K. LARSON, WORKERS' COMPENSATION LAW § 124.04[2] (2002). Moreover, "[a]s to variance between pleadings and proof, wide latitude is allowed." *Id.* at § 124.04[5]. Applied Industrial does not contend on appeal that Claimant was not an employee at the relevant times— October 1998 and November 1999—or that he was not performing work-related tasks. That Claimant vacillated as to exactly when the injuries occurred was a matter of weight for the jury to consider in determining whether he had sustained his burden of proving the alleged accidental injuries. We therefore reject Applied Industrial's argument that Claimant failed to prove the occurrence of the accidental injuries simply because his trial testimony concerning the dates on which the accidents occurred differed from the dates he identified in his claims for compensation.

Again relying on the discrepancy between the dates Claimant put before the Commission and those he put before the jury, Applied Industrial separately argues that its motion for judgment should have been granted because the Commission's role as the "tribunal of first instance" was usurped by the court's allowing the jury to consider "essentially . . . a new claim." The jury did not consider new claims; the claims were precisely those considered by the Commission. The Commission was well aware that Claimant was unsure of the dates on which the accidents occurred and advised the parties that the lack of specificity in the dates was not of concern to the Commission in its decision. As the Commissioner stated: "I'm not that worried about the date of the accident. I'm more concerned about the merits and the substance of the case. I don't know that the date is a big issue." The circuit court likewise viewed the variance in the dates as a matter of "form," not "substance," and repeated that inconsistent dates "were not the thrust" of the Commission's decision.

■    Applied Industrial also asserts that the inexactness of dates prejudiced its investigation of Claimant's initial claim for benefits, and that allowing Claimant to receive workers' compensation benefits without identifying the specific dates leaves the benefit system open to fraud and abuse.    Claimant responds that these issues are not preserved for review on appeal.    We agree.    Applied Industrial did not present either argument in support of its motions for judgment or, for that matter, at any other time during the trial.    Applied Industrial's failure to raise these arguments at trial precludes their being raised now.    Md. Rule 8–131(a).

In sum, the court did not err in denying Applied Industrial's motion for judgment.    The jury had before it legally sufficient evidence to support its finding that Claimant was twice accidentally injured and that the injuries arose out of and in the course of his employment.    We shall not disturb the jury's verdict.

## II.

■    Applied Industrial also assigns error to the court's refusal to sustain its objection to the verdict sheet.    There was no error.

■    Maryland Rule 2–522(c) gives the court the authority to design submissions to the jury and to format the jury's findings.    Consequently, a court's use of a particular format will not be reversed absent an abuse of discretion.    *Owens–Corning Fiberglas Corp. v. Garrett*, 343 Md. 500, 525, 682 A.2d 1143 (1996).

We have reviewed the verdict sheet and conclude that it is not "suggestive of a particular result" simply because the verdict sheet used the term "accident," as Applied Industrial asserts.    The verdict sheet asked the jury to decide whether the Commission was correct in determining that Claimant did not sustain the two alleged accidental injuries in the course of his employment.    The use of the word accident did not suggest the answer to the question that was before the jury.    This is all the more true given that the occurrence of the

accidents themselves was never called into serious question; instead, it was the timing and circumstances under which they occurred that the jury had to resolve.

■ Applied Industrial also submits that the accident dates listed on Claimant's benefits claim forms should have been added at the end of the verdict sheet to avoid potential jury confusion. The verdict sheet was not confusing on its face, nor is there any indication in the record that the jury was in fact confused. The jury was asked to determine only if the Commission was correct in determining that Claimant did not sustain compensable injuries. The verdict sheet so directed the jury to this task. There was no abuse of discretion by the circuit court.

### III.

■ Finally, Applied Industrial contends that the court abused its discretion in permitting the jury to deliberate and render a verdict after having just learned of the terrorist attack that had occurred that morning. Applied Industrial further contends that "no reasonable juror could possibly have concentrated on the complex issues" involved in the case under these circumstances. In essence, Applied Industrial argues that the court should have ordered a mid-trial continuance. Claimant responds that Applied Industrial failed to preserve this argument.

■ It is not enough, for an issue to be preserved for appellate review, that an objection be made. The objection must be timely. *Klauenberg v. State,* 355 Md. 528, 540, 735 A.2d 1061 (1999) (failure to make timely or appropriate objections constitutes waiver); *Lohss and Sprenkle v. State,* 272 Md. 113, 119, 321 A.2d 534 (1974) (party who fails to object when trial court still has power to correct error cannot complain on appeal). In this case, Applied Industrial delayed objecting until after the jury had been polled and advised the court of its desire to proceed. Indeed, it was not until after the court accepted the jury's decision and gave the jury its instructions that Applied Industrial lodged its objection. It

might have been preferable had Applied Industrial raised its concern when the matter was discussed initially. Yet, Applied Industrial did interpose an objection to the jury's being allowed to deliberate before those deliberations began. Under these circumstances, the issue is preserved for our review. *In re Ryan S.*, 369 Md. 26, 35–36, 797 A.2d 39 (2002).

Somewhat surprisingly, we have found no reported decisions involving the conduct of trials that were ongoing as the September 11th tragedy unfolded. Nevertheless, while the events of that day were unique in their significance and effect, we adhere to settled principles of appellate review as we assess the propriety of the court's decision in this case not to continue trial as it neared its conclusion.

Under these principles, the course and conduct of trial is left to the sound discretion of the trial court and its decisions in this regard will not be reversed absent abuse. *Cf. Wilhelm v. State,* 272 Md. 404, 413, 326 A.2d 707 (1974) ("The conduct of the trial must of necessity rest largely in the control and discretion of the presiding judge and an appellate court should in no case interfere with that judgment unless there has been an abuse of discretion by the trial judge of a character likely to have injured the complaining party."). Whether to grant a mid-trial continuance is among those decisions left to the court's discretion. *Butkus v. McClendon,* 259 Md. 170, 175, 269 A.2d 427 (1970); *see also Wilson v. State,* 345 Md. 437, 450–51, 693 A.2d 344 (1997) (stating that trial courts are "vested with a significant amount of discretion" in determining whether to grant a mid-trial continuance, and may consider the convenience of the court, the jury, or witnesses).

In this case, the court, presumably after discussion with counsel, decided to poll the jurors to ascertain their desire to proceed with the trial despite the events of that morning.[5]

---

**5.** The transcript of trial reflects that part of the discussion on this subject occurred "off the record." The record does indicate that jurors

The jury was polled and all members indicated by a show of hands that they wished to continue the trial to conclusion. The court's decision permitting the jury to do so was well-considered and, given the jury's express desire to continue, was a proper exercise of discretion under the circumstances.

We mention as a final matter the jury's note addressing this issue. That note expressed, quite eloquently, that the jurors had agreed to continue with the final phases of the trial, and were determined to "carry out the business with which [they] were charged ... with deliberate and careful attention in the interest of fairness to all parties." There is every indication that the jurors did precisely that; we applaud them for their admirable response to this important duty of citizenship in this country.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**

were permitted an opportunity to contact family during a brief recess that occurred prior to instructions and closing arguments.