REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0718

September Term, 2015

_____

ELECTRICAL GENERAL CORP., ET AL.

v.

MICHAEL L. LABONTE

_____

Berger,
Wright,
Reed,

JJ.

_____

Opinion by Reed, J.

_____

Filed: July 27, 2016

This appeal stems from a jury verdict in the Circuit Court for Anne Arundel County that reversed the finding of the Maryland Workers' Compensation Commission ("Commission") that Michael Labonte's current back condition is not causally related to the accidental work injury he suffered on September 2, 2004, but rather entirely to a subsequent intervening accident he suffered on December 31, 2006. In so reversing the Commission, the jury authorized Mr. Labonte's requests for medical treatment and payment of his medical bill dated February 2, 2012. Mr. Labonte's employer, Electrical General Corporation, and insurer, Selective Insurance Company of America, (together "appellants") present four questions for our review, which, for clarity, we have rephrased as follows:[1]

---

[1] The appellants phrased the questions in their brief exactly as follows:

1. Whether the previously determined finding that the Claimant sustained a subsequent intervening accident barred any further liability of the Employer and Insurer for workers' compensation benefits due to a prior work injury?

2. Whether the Circuit Court erred by allowing the jury to consider whether the Claimant sustained a subsequent intervening accident to his back because litigation of that issue was precluded under the doctrine of collateral estoppel?

3. Whether the Circuit Court erred in submitting the jury question of whether the Claimant's back condition was causally related to the work injury because the question was insufficient to resolve the factual disputes between the parties and improperly shifted the burden of proof to Employer and Insurer?

4. Whether the Circuit Court erred by allowing the jury to decide issues that were not previously decided by the Workers' Compensation Commission?

1. Did the Workers' Compensation Commission's previous finding that Mr. Labonte had sustained a subsequent intervening accident bar him from receiving the additional benefits awarded to him by the jury?

2. Should the doctrine of collateral estoppel have barred the jury from considering whether Mr. Labonte's current back condition was caused by a subsequent intervening accident?

3. Did the circuit court err in submitting to the jury the question of whether Mr. Labonte's back condition was causally related to the work injury?

4. Did the circuit court err by allowing the jury to decide issues relating to both apportionment and the reasonableness and necessity of Mr. Labonte's requests for medical treatment and payment of medical expenses?

Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2004, Michael Labonte ("appellee"), an electrician, sustained an accidental work injury to his back while attempting to steady a falling forty-foot ladder. He subsequently filed a claim with the Workers' Compensation Commission on September 27, 2004. The Commission conducted a hearing on June 15, 2005, and, by Order dated June 22, 2005, found that the appellee's persisting back condition was the result of the aforementioned accidental work injury. Following that Order, the appellants began paying for the appellee's medical treatment and providing him with out-of-work benefits. The Commission conducted three more hearings throughout the next year and a half, each resulting in the authorization of the appellee's requests for additional medical treatment and/or out-of-work benefits.

2

On December 31, 2006, while operating his vehicle on the roadway, the appellee was pulled over by a police officer. An altercation ensued, during which time the appellee was slammed against the hood of the police car by an officer. This altercation caused the appellee to experience increased pain in his back. Therefore, the appellee's treating physician, Dr. Najmaldin O. Karim, placed him out of work for approximately one month. Dr. Karim indicated that the altercation with the police officer aggravated the appellee's pre-existing herniated disc but did not create a new or separate injury.

In early 2007, the appellee filed Issues with the Commission requesting additional temporary total disability from January 4, 2007, to March 9, 2007. The Commission conducted a hearing on this request on March 9, 2007. Thereafter, by Order dated March 30, 2007, the Commission found that "the [appellee]'s need for lumbar epidural injections is not causally related to [his work-related] accident" in 2004. Furthermore, the Commission found that the appellee's disability between January 4, 2007, and March 9, 2007, was caused by "a subsequent event on December 31, 2006" (*i.e.*, the altercation with the police officer). Accordingly, the Commission denied appellee's early 2007 request for treatment.

Later in 2007, the appellee filed another set of Issues with the Commission. This time, in addition to the payment of medical expenses, he requested compensation for permanent partial rather than temporary total disability. The Commission conducted a hearing on October 4, 2007. On October 15, 2007, the Commission issued an Order in which it found, with regard to the appellee's claim for permanent partial disability, that he "[h]as overall 30% industrial disability to the body due to an injury to the back; 20% is due

3

to this accidental injury, and 10% is causally connected to pre-existing and subsequent condition[.]" As such, the Commission ordered that the appellee be paid "at the rate of $247.00, payable weekly, beginning December 20, 2006, for a period of 100 weeks." However, the Commission again denied, on the basis of a subsequent intervening injury, the appellee's request for payment of the medical bills he incurred between January 15, 2007, and March 5, 2007.

On October 10, 2012, the appellee filed a petition to reopen his workers' compensation claim for worsening of his permanent partial disability. He again requested authorization of medical treatment and payment of medical expenses. However, this time his request for payment of medical expenses was in relation to those he incurred on February 16, 2012, rather than in early 2007. A hearing took place before the Commission on January 16, 2013, which was followed up by an Order dated January 24, 2013. In this latest Order, the Commission found that the "Orders dated [March 30, 2007,] and [October 15, 2007,] establish a subsequent intervening event which breaks the causal nexus between the accidental injury and the current condition." The Commission further found that "there is no[] worsening of [the appellee's permanent partial disability] which is causally related to the accidental injury of [September 2, 2004]." Accordingly, the Commission denied the appellee's requests for medical treatment and payment of medical expenses.

On February 4, 2013, the appellee filed a Petition for Judicial Review of the Commission's January 24, 2013, Order. In response, on November 13, 2013, the appellants filed a Motion for Summary Judgment. A hearing was held on the appellants' Motion for

Summary Judgment in the Circuit Court for Anne Arundel County on March 10, 2014. By Order dated March 13, 2014, the Motion for Summary Judgment was denied.

The case proceeded to jury trial on February 12, 2015. Conflicting expert testimony was presented during the trial, which lasted two days. Dr. Michael Franchetti testified on behalf of the appellee that the appellee suffered from an overall impairment level of fifty-three (53) percent. Dr. Franchetti further testified that the entirety of the appellee's impairment level was caused by the accidental work injury he sustained on September 2, 2004. The appellants' expert, Dr. Edward Cohen, disagreed. Dr. Cohen testified that the appellee's back condition had not worsened since 2007 as a result of the original work injury in 2004.

On February 13, 2015, the jury returned its verdict that: 1) the appellee's current back condition is causally related to the September 2, 2004 work injury; 2) the appellee's back condition has worsened one hundred (100) percent as a result of the accidental work injury since the Commission's October 15, 2007, Order; 3) the appellee's request for medical treatment was reasonable, necessary, and causally related to his work injury; and 4) the appellee's request for payment of medical expenses incurred on February 16, 2012, was also reasonable, necessary, and causally related to the work injury. The jury's verdict was entered on March 4, 2015. On March 6, 2015, the appellants filed a Motion for Judgment Notwithstanding the Verdict, which was ultimately denied. Therefore, on June 15, 2015, the appellants noted this timely appeal.

5

## I. LEGAL EFFECT OF THE SUBSEQUENT INTERVENING ACCIDENT

### A. The Contentions of the Parties

The appellants argue that "[w]here a workers' compensation Claimant's disability is due in part to [a subsequent intervening] injur[y], . . . the Employer is not responsible for ongoing benefits or treatment." The appellants rely primarily on two cases in support of this proposition: *Martin v. Allegany Cnty. Bd. of Cnty. Comm'rs*, 73 Md. App. 695 (1988), and *Reeves Motor Co. v. Reeves*, 204 Md. 576 (1954). The appellants assert that the appellee's altercation with the police officer on December 31, 2006, broke the causal connection between the appellee's current back condition and the accidental work injury he sustained on September 2, 2004. The appellants also point to the Commission's March 30, 2007, and October 4, 2007, Orders in which the Commission specifically denied the appellee's requests on the grounds that he had sustained a subsequent intervening injury. Therefore, the appellants contend that "the Circuit Court erred in denying both the Employer and Insurer's Motion for Summary Judgment and . . . Motion for Judgment Notwithstanding the Verdict or New Trial."

The appellee, on the other hand, argues that "[i]t is well settled in Maryland that a preexisting medical condition may deteriorate *independent of and despite* the existence of a subsequent injury." (citing *Subsequent Injury Fund v. Thomas*, 275 Md. 628 (1975)) (emphasis added). The appellee asserts that *Martin* can be distinguished from the present case because the former only "discussed subsequent events in the context of temporary

disability," whereas the latter involves permanent disability. The appellee contends that *Reeves* is likewise distinguishable because in that case the workers' compensation claimant did not present any evidence that his surgery was caused, even in part, by the work injury. The appellee argues that in the case *sub judice*, unlike *Reeves*, there is plenty of evidence linking his claim to his accidental work injury, including the testimony of Dr. Franchetti. Lastly, the appellee asserts that a subsequent injury does not necessarily preclude an employer from further liability, as evidenced by the fact that permanent partial disability, unlike temporary disability, can be apportioned to different causes. *See* Md. Code Ann., Lab. & Empl. § 9-656; *Martin*, 73 Md. App. at 699-700; and Maryland Civil Pattern Jury Instruction ("MCPJI") 30:30.

**B. Standard of Review**

The appellants are essentially arguing that under Maryland case law, a subsequent intervening accident such as the one the appellee suffered when he was slammed against the hood of the police car serves to bar the employer from further liability on a previously-sustained work accident. As the Court of Appeals has explained, "where an order involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review." *Schisler v. State*, 394 Md. 519, 535 (2006) (citing *Garfink v. Cloisters at Charles, Inc.,* 392 Md. 374, 383 (2006); *Gray v. State,* 388 Md. 366, 374–75 (2005); *Nesbit v. GEICO,* 382 Md. 65, 72 (2004); and *Walter v. Gunter,* 367 Md. 386, 392 (2002)). Thus, we shall review this issue *de novo*.

7

## C. Analysis

We agree with the appellee that his subsequent intervening accident did not, *per se*, preclude further liability on the part of his employer for the permanent partial injury he sustained on the job. We explain.

The appellants and appellee agree that the jury was properly instructed with MCPJI 30:12, which provides:

> **Worker's Compensation—Causal Relationship.** In order to be compensable there must be proof that the injury could have been caused by the accident and nothing else after the accident occurred to cause the injury.
>
> When an employee has an injury that arises out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment.

*Id*. *See* Appellants' Reply Br. at 3; Appellee's Br. at 12. This pattern jury instruction makes clear that for an accidental work injury to be compensable, there must be "proof that the injury could have been caused by the [work] accident," as well as "proof that . . . nothing else after the accident occurred *to cause* the injury." MCPJI 30:12 (emphasis added). Indeed, in the case at bar, sufficient proof existed to support the compensability of the appellee's work injury.

During trial, the jury was presented with evidence that the severity of the appellee's work injury far outweighed the severity of the injury he sustained on December 31, 2006. For example, they heard evidence that the appellee either missed work or was on modified duty for almost two years following the September 2, 2004, accident, but only missed work

for approximately one month as a result of the subsequent accident where he was slammed against the hood of the police car. Furthermore, they heard the expert opinion of Dr. Cohen, who testified that while the appellee required surgery as a result of his work injury, he was treated for the injury he sustained in 2006 with a mere combination of medication and exercise. Finally, they heard the testimony of Dr. Franchetti, who opined that the appellee's condition had, since 2007, deteriorated such that he was suffering from "a . . . 53 percent whole person impairment due [entirely] to his lumbar spinal injury of September 2, 2004." Therefore, despite the fact that the appellants' expert disagreed with Dr. Franchetti's conclusion, there was sufficient proof that the appellee's back condition was caused by his work accident and not by the December 31, 2006, incident with the police officer. *See generally Pryor v. State*, 195 Md. App. 311, 329 (2010) ("A fact-finder is free to believe part of a witness's testimony, disbelieve other parts of a witness's testimony, or to completely discount a witness's testimony. Contradictions in testimony go to the weight of the testimony and credibility of the evidence, rather than to its sufficiency.").

In addition, we note that the appellants describe MCPJI 30:12 as being "identical to the standard of *Reeves*." In that case, which is central to the appellants' argument, Harold Reeves was injured at work on November 10, 1951, and subsequently underwent an operation on December 27, 1951. *Reeves*, 204 Md. at 580-81. Mr. Reeves' employer and insurer had

> filed a motion for a directed verdict on the ground that other than temporary total disability from November 10, 1951, to November 24, 1951, the claimant had offered no legally sufficient evidence that the accident of November 10, 1951,

9

was the proximate cause of his temporary total disability or his permanent partial disability thereafter.

*Id.* at 578. Essentially, the employer and insurer argued that the work injury was no longer the cause of Mr. Reeves' disability because it was only "[a]s a result of [the December 27, 1951,] operation to prevent dislocation[] [that] the shoulder became partially immobilized." *Id.* Id. at 581. According to Mr. Reeves' employer and insurer, it was the surgery, not the work accident, which caused "the claimant . . . [to] now [be] suffering from a forty per centum permanent partial disability of the arm." *Id.* The Court of Appeals framed the issue as "whether there is any legally sufficient evidence to justify submitting to the jury the question of whether there was any causal connection between the [work] accident of November 10, 1951, and [Mr. Reeves'] . . . temporary total . . . and . . . permanent partial disability." *Id.* at 579. Ultimately, the Court held that because Mr. Reeves' own doctor did not testify that the operation was necessitated by the work injury, "there is no evidence of causal connection between the accident relied on and the operation and subsequent disability." *Id.* at 583.

In the present case, unlike *Reeves*, there was evidence of the causal connection between the appellee's permanent partial disability and his work accident on September 2, 2004. As the Court of Appeals has explained,

> It is established in this State that in Workmen's Compensation cases proximate cause means that the result could have been caused by the accident and no other efficient cause has intervened between the accident and the result. Possibility that the injury caused the result must amount to more than a guess and the relation of the accident to the condition complained of in point of time and circumstance must not be merely fanciful. *Baber v. John C. Knipp & Sons*, 164 Md. 55, 163 A.

10

862; *Moller Motor Car Co. v. Unger*, 166 Md. 198, 206, 170 A. 777; *Bethlehem Steel Co. v. Ruff, Md.*, 101 A.2d 218. The law requires proof of probable, not merely possible facts, including causal relationship. *Paul Construction Co. v. Powell*, 200 Md. 168, 181, 88 A.2d 837. . . . Under the Workmen's Compensation Act, Code 1951, art. 101, § 1 et seq., compensation should not be allowed in a case in which the injury, which is the basis of the claim, cannot be attributed to some service or act in the employment or found to be reasonably incidental thereto, but ensues from some hazard to which the workman would have been equally exposed apart from his employment. *Consolidated Engineering Co. v. Feikin*, 188 Md. 420, 425, 52 A.2d 913.

*Reeves*, 204 Md. at 581-82. We hold that the evidence presented at trial was sufficient to satisfy this standard and, thus, to establish that the work accident is the proximate cause of the appellee's ongoing disability.

The appellants also rely heavily on *Martin*, *supra*. However, that case, like *Reeves*, is distinguishable because it involved the shifting of liability for temporary disability benefits (as opposed to permanent disability benefits in the case at bar) from one employer to another after the jury determined that the employee's disability was causally related to injuries he sustained during subsequent employment. *Id.* at 696-701. In *Martin*, we noted that because "benefits are to be awarded for a *temporary disability* without regard to pre-existing disease or infirmity[,] . . . it is the final accident contributing to the disability which is to serve as the basis for liability." *Id.* at 700 (citing THIRD REPORT OF THE COMMISSION TO STUDY MARYLAND'S WORKMEN'S COMPENSATION LAWS AND THE OPERATION OF THE STATE INDUSTRIAL ACCIDENT COMMISSION NOW KNOWN AS THE WORKMEN'S COMPENSATION COMMISSION, *reprinted in* LEGISLATIVE COUNCIL OF MARYLAND, REPORT TO THE GENERAL ASSEMBLY OF 1960, 191, at 192 (1959)) (emphasis added). In

11

fact, we explicitly addressed how our holding might have been different if permanent disability benefits, rather than temporary disability benefits, were at issue:

> [Md. Code (1957),] Art[.] 101, § 36(7) provides for apportionment of an employer's liability in cases of permanent disability where the employee's disability is due in part to some disease or infirmity that existed before the compensable accident. The subsection contains language stating that it is inapplicable to cases of temporary total or temporary partial disability.

*Martin*, 73 Md. App. at 699.

The fact that permanent disability benefits can be apportioned between an original work accident and a subsequent accident is also supported by the pattern jury instruction on apportionment of permanent disability. That instruction states, in relevant part:

> If you determine that the permanent disability . . . of the Employee is due in part to a pre-existing condition or a condition that developed after, but is not related to, the accidental injury . . . , you should determine:
> (1) To what extent, if any, is the disability . . ., due to the accidental injury . . . ; [and]
>
> &ast; &ast; &ast;
>
> (3) To what extent, if any, is the disability . . . due to any condition that developed after, but is not related to, the accidental injury[.]

MCPJI 30:30. Therefore, it is clear that permanent disability benefits, unlike temporary disability benefits, can be caused by both an initial work accident and a subsequent accident so as to preserve the liability of the employer for that portion of the disability that is attributable to the initial accident.

12

For the foregoing reasons, we hold that the injury sustained by the appellee on December 31, 2006, does not, as a matter of law, preclude the appellants from further liability.

## II. COLLATERAL ESTOPPEL

### A. The Contentions of the Parties

The appellants argue that "[t]he issue of whether or not the Claimant sustained a subsequent intervening accident to his back on December 31, 2006, had already been litigated and decided by the March 30, 2007, and October 15, 2007, Orders of the . . . Commission." Therefore, according to the appellants, the jury should have been precluded under the doctrine of collateral estoppel from reconsidering this issue. The appellants assert that because neither the March 30, 2007, Order nor October 15, 2007, Order was appealed from, and because the January 24, 2013, Order merely restated the prior findings of the 2007 Orders, "there was no [new] issue of fact requiring a determination by a jury" beyond the statute of limitations deadline. *Id.* at 15.

The appellee responds with the argument that "*res judicata* d[oes] not apply to the previous findings of permanent partial disability due to the modification provisions of the Workers' Compensation Act." Additionally, the appellee argues that the Commission's 2007 findings that "the December 31, 2006, incident was a subsequent intervening accident applies only to the specific requested treatment at that time." *Id.* at 17-18 (emphasis omitted). In other words, the appellee asserts that the Commission's finding regarding the treatment he requested three months after the altercation with the police officer was not a finding that "any future deterioration of [his] back may **only** be the result of a subsequent

13

accident rather than a preexisting one." *Id.* at 18. Nevertheless, the appellee contends that the Commission did, in fact, make a new ruling on the causal relationship between his work accident and his back condition. The appellee argues that by finding in the January 24, 2013, Order that "there is not worsening of condition which is causally related to the accidental injury of September 2, 2004," the Commission implicitly raised a new issue of fact that was ripe for the jury's determination.

## B. Standard of Review

We previously explained that

> [where a] motion for summary judgment . . . raise[s] the legal doctrine of collateral estoppel, . . . whether this doctrine should be applied is ultimately a question of law for the court. Therefore, we examine *de novo* the court's legal determination of whether collateral estoppel should apply based on the court's sustainable findings of fact.

*Shader v. Hampton Imp. Ass'n, Inc.*, 217 Md. App. 581, 605, *cert. granted sub nom.*, *Shader v. Hampton Imp. Assoc.*, 440 Md. 225 (2014), *and aff'd*, 443 Md. 148 (2015). Accordingly, we shall apply a *de novo* standard of review to the issue of whether the doctrine of collateral estoppel should have barred relitigation of the Commission's finding in March 2007 and October 2007 regarding the existence of a subsequent intervening event.

## C. Analysis

We must begin our analysis by recognizing the

> four-part test which must be satisfied in order for the doctrine of collateral estoppel to be applicable[:] . . .
> 1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
> 2. Was there a final judgment on the merits?

14

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Washington Suburban Sanitary Comm'n v. TKU Associates*, 281 Md. 1, 18-19 (1977) (citing *Pat Perusse Realty Co. v. Lingo*, 249 Md. 33, 45 (1968)). We agree with the appellant that the doctrine of collateral estoppel applies with full force to decisions of administrative agencies such as the Workers' Compensation Commission. *See Batson v. Shiflett*, 325 Md. 684, 701-03 (1993). However, we hold that the circuit court properly determined that the doctrine of collateral estoppel did not preclude the jury from considering the subsequent accident of December 31, 2006.

The appellants argue that the Commission's Orders of March 30, 2007, and October 15, 2007, stand "unimpeached" because they were not appealed from within the statute of limitations deadline. We disagree. The March 30, 2007, Order merely resolved the issue of whether the appellee's claim for temporary total disability benefits and medical treatment from January 4, 2007, to March 9, 2007, should be granted despite the occurrence of a subsequent event on December 31, 2006. In denying the appellee's request for benefits and treatment, the Commission only decided the issue of the causal connection between the work injury of September 2, 2004, and the benefits and treatment requested in the *three month period* following the incident in which the appellee was slammed against the hood of a police car. Accordingly, the Commission's March 30, 2007, Order did not contain a finding that the appellee's disability was causally disconnected from the work injury indefinitely from that date forward.

This is evidenced by the fact that in its October 15, 2007, Order, the Commission found that "[the appellee] has an overall 30% [permanent] disability . . . due to an injury to the back; 20% is due to this accidental [work] injury, and 10% is causally connected to pre-existing and subsequent conditions[.]" In other words, on October 15, 2007, the Commission found that the appellee had a 20% permanent disability to his body that was *causally unrelated* to his altercation with the police officer. Thus, the issue decided by the Commission in October 2007 was what percentage of the appellee's permanent disability *at that time* was due to the work accident. This is entirely different than the issue presented in the case *sub judice*, namely, whether the appellee's disability as a result of the work accident had *worsened* by January 24, 2013 (*i.e.*, by the date the Commission issued the order being presently appealed from). Thus, the first element of collateral estoppel is not satisfied.

For the aforementioned reasons, we hold that the 2007 Orders did not, under the doctrine of collateral estoppel, preclude the jury from considering whether the appellant's current back condition is causally connected to his work accident. A holding to the contrary, at least with respect to an employee's first claim regarding the worsening of his permanent partial disability, would be inconsistent with the Commission's continuing powers to modify its previous findings. *Subsequent Injury Fund v. Compton*, 28 Md. App. 526, 530 (1975), *aff'd sub nom.*, *Anchor Motor Freight, Inc. v. Subsequent Injury Fund*, 278 Md. 320 (1976).

## III. VERDICT SHEET

### A. The Contentions of the Parties

The appellants contend that the circuit court impermissibly shifted the burden of proof onto them where it submitted to the jury the specific question of "Is [the appellee]'s current back condition causally related to the September 2, 2004, work injury?" The appellants argue that this error would have been avoided if the jury question either contained a reference to the appellee's altercation with the police officer on December 31, 2006, or was accompanied by their proposed jury instruction. According to the appellants, this question, which was the first of four to appear on the verdict sheet, was "insufficient to properly resolve the factual disputes between the parties."

In addition, the appellants assert that

> the Commission never had to decide on the issues of worsening of permanent partial disability, the reasonableness and necessity of the Claimant's requested medical treatment, or the reasonableness and necessity of the Claimant's requested payment of medical expenses. As such, the jury was not permitted to consider these issues for the first time on appeal.

*Id.* at 20.

The appellee argues that the jury "was informed by the court via jury instructions that it was the Appellee who had the burden of proving the Commission's decision was wrong." Moreover, the appellee asserts that the circuit court properly used the applicable pattern jury instruction, which clearly states that the jury is to consider any intervening events that could be the cause of the injury. Therefore, because the jury was presented time

17

and time again throughout the two-day trial with evidence of the December 31, 2006, altercation with the police officer, the appellee contends that the circuit court did not err in submitting the first question on the verdict sheet.

Additionally, the appellee argues that the appellants waived the issue of whether the jury could consider the worsening of his permanent partial disability by not raising the issue at the close of all the evidence. Nevertheless, the appellee quite simply asserts that the worsening of his disability, the authorization of his medical treatment, and the payment of his medical expenses were all the subject of specific findings by the Commission in its January 24, 2013, Order and, therefore, these issues were all ripe for the jury's consideration.

**B. Standard of Review**

On appeal from an Order issued by the Workers' Compensation Commission, the circuit court is "jurisdictionally limited to a review of the issues raised and decided by the Commission explicitly or implicitly, and to such relevant matters on which there was evidence before the Commission." *Altman v. Safeway Stores, Inc.*, 52 Md. App. 564, 566 (1982), *aff'd*, 296 Md. 486 (1983). Our review of whether this jurisdictional limitation has been satisfied "involves an interpretation and application of Maryland . . . case law[.]" *Schisler*, 394 Md. at 535. Therefore, we "must determine whether the trial court's conclusion[] [in this regard is] . . . 'legally correct' under a *de novo* standard of review." *Id.*

However, when it comes to the manner in which the circuit court presents issues properly before it to the jury in the form of verdict sheet questions, "a court's use of a

18

particular format will not be reversed absent an abuse of discretion." *Applied Industries Techs. v. Ludemann*, 148 Md. App. 272, 287 (2002) (citing *Owens-Corning Fiberglas Corp. v. Garrett,* 343 Md. 500, 525 (1996)); *See also Consolidated Waste Indus., Inc. v. Standard Equip. Co.*, 421 Md. 210, 220 (2011) ("[T]he decision to use a particular verdict sheet will not be reversed absent abuse of discretion. Moreover, Maryland appellate courts generally will not reverse even an unreasonable decision without evidence of prejudice/harm."). As we have repeatedly indicated, we will only find that an abuse of discretion has occurred

> "where no reasonable person would share the view taken by the trial judge." *Brown v. Daniel Realty Co.,* 409 Md. 565, 601, 976 A.2d 300, 321 (2009) (citing *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110, 118 (1997)). That is to say, an abuse of discretion occurs when a decision is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *King v. State,* 407 Md. 682, 711, 967 A.2d 790, 807 (2009) (internal quotation marks and citation omitted). Thus, "a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling." *Id.* (internal quotation marks and citation omitted). "Whether there has been an abuse of discretion depends on the particular circumstances of each individual case." *Pantazes v. State,* 376 Md. 661, 681, 831 A.2d 432, 444 (2003).

*Consolidated Waste*, 421 Md. at 219.

### C. Analysis

#### i. Question Regarding Causal Relationship

We hold that the circuit court did not abuse its discretion in submitting the first question on the verdict sheet. "We have reviewed the verdict sheet and conclude that it is

not 'suggestive of a particular result' simply because" question number one did not mention the December 31, 2006, event. *Applied Industries*, 148 Md. App. at 287. However, even in cases where verdict sheet questions do constitute an abuse of discretion by the trial court, we do not reverse unless the aggrieved party can show how it was prejudiced. In the present case, both the appellee's and appellants' counsel referenced the December 31, 2006, event in their opening statements. There was subsequently an abundance of testimony regarding the December 31, 2006, event. Finally, the appellants' counsel's closing argument centered around how the altercation with the police officer broke the causal connection between the appellee's back condition and the work injury. Therefore, the appellants were not prejudiced by the jury being asked the simple question, "Is [the appellee]'s current back condition causally related to the September 2, 2004, work injury?"

### ii. Jury's Consideration of Worsening of Permanent Partial Disability and Reasonableness and Necessity of Medical Treatment and Expenses

The appellants' argument that the circuit court should not have allowed the jury to consider the worsening of the appellee's permanent partial disability or the reasonableness and necessity of the requested medical treatment and expenses is without merit. The appellants argue that these issues were not proper for review by the circuit court because they weren't decided by the Commission. However, in its Order dated January 24, 2013, the Commission found:

> [O]n Issues #3 and #4 that authorization for medical treatment is denied and finds that the request for payment of medical expenses of Dr. Ammerman dated 2/16/12 is denied. The Commission finds on Issue #5 that there is not worsening of condition which is causally related to the accidental injury of 9/2/04.

20

Quite positively, these issues were addressed by the Commission and, therefore, were ripe to be decided upon by the jury.

For the reasons outlined in this opinion, the judgment of the Circuit Court for Anne Arundel County is hereby affirmed.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**