## J & M CONSTRUCTION CO. ET AL. *v.* CARROLL E. BRAUN ET AL.

[No. 293, September Term, 1979.]

*Decided February 6, 1980.*

The cause was argued before LOWE, MELVIN and MASON, JJ.

*Patrick G. Cullen,* with whom were *Lerch & Huesman* on the brief, for appellants.

*John J. Szymanski, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee Subsequent Injury Fund. *Thomas J. Michels, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Charles R. Goldsborough, Jr., Assistant Attorney General,* on the brief, for appellee State Accident Fund.

MELVIN, J., delivered the opinion of the Court.

This workmen's compensation case involves the liability of two successive employers and their respective insurance carriers as well as that of the Subsequent Injury Fund for the payment of vocational rehabilitation benefits awarded a claimant. There is no dispute that the claimant is entitled to the benefits. The question is who should pay for them. The facts giving rise to the controversy are virtually undisputed.

## I

On May 12, 1975, Carroll E. Braun, the claimant, sustained an accidental injury to his back while employed by the 3-B Demo Wrecking Company. As a consequence, the Workmen's Compensation Commission determined, by its order of June 9, 1976, that the claimant had sustained a *permanent partial disability amounting to 25% industrial loss of use of his body* and ordered his employer's insurer, the State Accident Fund, to pay him compensation therefor. On August 27, 1976, the claimant was injured in a second accident while employed by J & M Construction Company. He filed a workmen's compensation claim against the J & M Construction Company and its insurer, Northwestern National Insurance Company (Northwestern). On October 21, 1976, the Commission passed an order awarding the claimant *temporary* total disability

payments for this second injury. The order provided that "[t]his Award is subject to further determination by this Commission as to whether the claimant has sustained any permanent disability."

Thereafter, but before any determination by the Commission had been made as to any permanent disability resulting from the second accident, the claimant indicated to his second employer's insurer, Northwestern, that he felt entitled to vocational rehabilitation benefits pursuant to Md. Ann. Code (1957, 1979 Repl. Vol.) Art. 101, § 36 (9). This section provides:

> (a) "When as the result of an injury, an employee is disabled from performing work for which he was previously qualified, he shall be entitled to vocational rehabilitation as reasonably necessary to restore him to suitable employment. The employer and insurer shall pay the expenses of the vocational rehabilitation.

> * * *

> (c) During the period an employee is undergoing vocational rehabilitation training, he shall be entitled to compensation as if he were temporarily totally disabled."

To resolve the issues of whether the claimant was entitled to vocational rehabilitation benefits and who was to pay for them, four issues were submitted to the Commission:

> "(1)  Was the Claimant, as the result of the accident of August 27, 1976, disabled from performing work for which he was previously qualified?

> (2)  If the answer to Issue #1 is in the affirmative, should the State Accident Fund pay all or a portion of the expenses of Vocational Rehabilitation?

> (3)  If the answer to Issue #1 is in the affirmative, should the Subsequent Injury Fund pay all or

a portion of the expenses of Vocational Rehabilitation?

(4) If the answer to Issue #1 is in the affirmative, should Northwestern National Insurance Company pay all or a portion of the expenses of Vocational Rehabilitation?"

On May 16, 1978, the Commission held a hearing on these issues and by its order of July 11, 1978, determined, as to the first issue, that "as a result of the accidental injury of August 27, 1976 [the second injury] the claimant was disabled from performing work for which he was previously qualified," thus "entitling him to vocational rehabilitation." Art. 101, § 36 (9). As to the other three issues, the Commission determined that the second employer's insurer, Northwestern, "shall pay all of the expenses of Vocational Rehabilitation for the above named claimant [Carroll E. Braun]," and that neither the State Accident Fund (insurer of the claimant's first employer) nor the Subsequent Injury Fund should pay any portion of the expenses. The order further provided that J & M Construction Company (the claimant's second employer) and its insurer, Northwestern, pay to the claimant "compensation for Vocational Rehabilitation at the rate of $160.00 per week *as if he were temporarily totally disabled,* same to begin when Vocational Rehabilitation begins." [1] (Emphasis added).

J & M Construction Company and its insurer, Northwestern, appealed the Commission's order of July 11, 1978 to the Superior Court of Baltimore City, contending that the Commission erred in its holding that neither the State Accident Fund (the insurer for the claimant's employer at the time of his first injury) nor the Subsequent Injury Fund were responsible for any of the expense for the claimant's vocational rehabilitation.[2] The appellants sought to have presented to a jury issues which would determine whether the

---

1. The order also provided that "compensation for temporary total disability terminates on September 2, 1977."

2. As already noted, none of the parties dispute the Commission's findings that after the second accident the claimant "was disabled from performing work for which he was previously qualified" and thus that he was "entitled to vocational rehabilitation reasonably necessary to restore him to suitable employment." Art. 101, § 36 (9).

claimant's conceded disability to perform work for which he was previously qualified was due to his first injury on May 12, 1975, his second injury on August 27, 1976, or to the combined effect of both injuries.

On the scheduled trial date, both the Subsequent Injury Fund and the State Accident Fund filed oral motions for Summary Judgments, contending that on the relevant undisputed facts the Commission's order should be affirmed as a matter of law. The court below granted the motions and judgment absolute was entered in favor of the appellees. It is from this judgment that J & M Construction Company and Northwestern have appealed to this Court.

## II

We think the motions for summary judgment as to both the Subsequent Injury Fund and the State Accident Fund were properly granted.

### The Subsequent Injury Fund

Payments from the Fund are regulated by Code (1957, 1979 Repl. Vol.), Art. 101 § 66 (1).[3] As stated by the Court of Appeals in *Anchor Motor v. Sub. Injury Fund,* 278 Md. 320, 363 A.2d 505 (1976), this statute contains "three basic

---

3. In pertinent part, the statute reads as follows:

"Whenever an employee who has a permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury alone, the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury. However, in addition to such compensation to which the employer or his insurance carrier is liable, and after the completion of payments therefor provided by this article, the employee shall be entitled to receive and shall be paid additional compensation from a special fund to be known as the 'Subsequent Injury Fund,' created for such purpose, in the manner described hereafter in this section, it being the intent of this section to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability.

prerequisites to compensation, recently summarized for this Court by Judge Eldridge in *Subsequent Injury Fund v. Thomas, supra,* 275 Md. at 632, 342 A.2d at 674:

> First, the employee must have a 'permanent impairment due to a previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment.' Second, the employee must incur 'a subsequent disability by reason of a personal injury, for which compensation is required by' the Workmen's Compensation Act. Finally, the 'previous impairment and subsequent accidental injury,' when combined, must result in total disability or a permanent partial disability which exceeds 50% of the body and which is 'substantially greater . . . than that which would have resulted from the subsequent injury alone." *Id.* at 325.

In the case before us, it is clear that at the time of its order of July 11, 1978, the Commission had not determined, nor had it been requested to determine, the claimant's ultimate disability following his second injury — much less that any "previous impairment" from his first injury, when combined with this second injury, resulted in "total disability or a permanent partial disability that exceeds 50% of the body and which is substantially greater . . . than that which would have resulted from the subsequent injury alone." *Id.* at 325. Nor was there evidence presented to the Commission at its May 16, 1978 hearing that would have given it the opportunity to pass upon these questions. The appellants, nevertheless, seem to argue that in their appeal to the Superior Court of Baltimore City they were entitled to have a jury determine,

---

Benefits from the Subsequent Injury Fund hereunder shall not be payable unless the combined effects resulting from a previous impairment and a subsequent accidental injury result in a permanent disability exceeding 50 per centum (50%) of the body as a whole; and that the previous impairment and subsequent accidental injury is each compensable, as determined by the Commission, for a period of not less than 125 weeks. However, the previous impairment shall be determined as of the date of the subsequent injury."

in the first instance, that the prerequisites of Section 66 (1) were met. The argument is without merit. *See Cabell Con. Blk. Co. v. Yarborough,* 192 Md. 360, 64 A.2d 292 (1949), where the Court of Appeals said:

"As the Commission is the original factfinding body, an issue of fact must originate with the Commission, and cannot be raised for the first time before the Court on appeal, for in such a case the Court is authorized only to modify or reverse the decision of the Commission upon a finding that it has erred in construing the law or the facts. *Bethlehem Steel Co. v. Mayo,* 168 Md. 410, 416, 177 A. 910. However, the rule that no issue of fact can be submitted on appeal where the record does not show that the question involved was before the Commission does not mean that a formal issue, specifically directed to the question, must be presented first to the Commission, but means merely that there must have been at least evidence before the Commission which would give it the opportunity to pass upon the question. *Jackson v. Bethlehem-Sparrows Point Shipyard,* 189 Md. 583, 589, 56 A.2d 702, 705." 192 Md. at 369.

From all of the above, it follows that in the posture of the case as it was presented to the Superior Court of Baltimore City the Subsequent Injury Fund could not be called upon to contribute to the claimant's compensation and that summary judgment in its favor was properly granted.

### The State Accident Fund

The pertinent statute here is codified in Md. Ann. Code (1957, 1979 Repl. Vol.), Art. 101, § 36 (7):

"(7) *Apportionment of permanent disability due in part to preexisting disease or infirmity.* — Whenever it shall appear that any *permanent* disability from which an employee is suffering following an accidental injury, is due in part to such injury, and in part to a preexisting disease or infirmity, the

Commission shall determine the proportion of *such disability* which is reasonably attributable to the injury and the proportion thereof which is reasonably attributable to the preexisting disease or infirmity, and such employee shall be entitled to compensation for that proportion of his disability which is reasonably attributable solely to the accident and shall not be entitled to compensation for that proportion of his disability which is reasonably attributable to the preexisting disease or infirmity. *This subsection shall not apply to temporary total and temporary partial disability.* This subsection shall not apply where the combined effects resulting from a previous impairment, as defined in § 66 (1), and a subsequent accidental injury result in a permanent disability exceeding fifty per centum (50%) of the body as a whole." (Emphasis added).

The appellants rely upon this statute to support their argument that the State Accident Fund (the insurer of the claimant's employer at the time of his first injury) should contribute to the expense of vocational rehabilitation. Their reliance is misplaced. Section 36 (7) provides for apportionment of only *permanent* disability. As already noted, the Commission has not in the first instance determined, nor was evidence presented to it from which it could determine, the extent of permanent disability the claimant suffered following the second injury. Since there has been no permanency determination there is nothing to apportion.

Moreover, although Section 36 (7) limits the liability of a second injury employer and its insurer to compensation payable for an employee's disability that is "reasonably attributable solely" to the second accident, there is nothing in that section that requires the first injury employer or its insurer to pay anything. In the circumstances, summary judgment was properly granted in favor of the State Accident Fund.

*Judgments affirmed; costs to be paid by appellants.*