Electrical General Corp. et al. v. Michael L. LaBonte, No. 69, September Term, 2016

**WORKERS' COMPENSATION ACT – MD. CODE ANN., LAB. & EMPL. (1991, 2016 REPL. VOL.) § 9-656 – ACCIDENTAL PERSONAL INJURY – SUBSEQUENT INTERVENING EVENT – WORSENING OF MEDICAL CONDITION –** Court of Appeals held that, where Workers' Compensation Commission has awarded permanent partial disability benefits based on accidental personal injury or occupational disease and has also determined that employee incurred subsequent intervening event—*e.g.*, an injury sustained outside course of employment—upon request to reopen alleging worsening of employee's medical condition, employee is entitled to compensation for permanent partial disability for any portion of such disability that is caused by and reasonably attributable solely to employee's accidental personal injury or occupational disease. Stated otherwise, where employee has incurred both accidental personal injury or occupational disease, and subsequent intervening event, and Workers' Compensation Commission has apportioned permanent partial disability benefits for accidental personal injury or occupational disease, existence of subsequent intervening event finding does not preclude Commission from awarding additional permanent partial disability benefits for worsening of employee's condition caused by and reasonably attributable solely to accidental personal injury or occupational disease.

Court of Appeals held that existence of subsequent intervening event does not, *per se*, preclude employer's liability for workers' compensation benefits. Employer may be liable for workers' compensation benefits where employee demonstrates that worsening of medical condition was caused by accidental personal injury or occupational disease.

Court of Appeals held that issues of whether accidental personal injury or occupational disease, or subsequent intervening event, caused worsening of employee's medical condition, and whether, for purposes of permanent partial disability benefits, worsening of employee's medical condition was reasonably attributable solely to accidental personal injury or occupational disease, are factual matters for Workers' Compensation Commission to determine in each individual case.

Circuit Court for Anne Arundel County
Case No. 02-C-13-180640

Argued: June 1, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 69

September Term, 2016

_____

ELECTRICAL GENERAL CORP. et al.

v.

MICHAEL L. LABONTE

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.

_____

Filed: July 10, 2017

The purpose of the Maryland Workers' Compensation Act, Md. Code Ann., Lab. & Empl. (1991, 2016 Repl. Vol.) ("LE") §§ 9-101 to 9-1201, "is to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment." Hollingsworth v. Severstal Sparrows Point, LLC, 448 Md. 648, 655, 141 A.3d 90, 94 (2016) (citation and internal quotation marks omitted). For purposes of the Workers' Compensation Act, "an accidental injury that arises out of and in the course of employment" is known as an "accidental personal injury[.]" LE § 9-101(b)(1). The Workers' Compensation Act divides disabilities that are caused by accidental personal injuries into four categories:

> temporary partial disability (disability which is temporary in duration and partial in extent) . . . ; temporary total disability (disability which is temporary in duration but total in extent) . . . ; permanent partial disability (disability which is permanent in duration and partial in extent) . . . ; and permanent total disability (disability which is permanent in duration and total in extent)[.]

Wal Mart Stores, Inc. v. Holmes, 416 Md. 346, 353 n.2, 7 A.3d 13, 17 n.2 (2010).

In this matter of first impression—where an employee suffered an accidental personal injury and incurred a subsequent injury outside the course of employment, the Workers' Compensation Commission ("the Commission") awarded permanent partial disability benefits, and, later, the employee alleged a worsening of the employee's medical condition—we must decide whether the existence of a subsequent intervening event finding by the Commission precluded the Commission from awarding additional permanent partial disability benefits and other workers' compensations benefits for

worsening of the employee's condition.

Michael L. LaBonte ("LaBonte"), Respondent, was an electrician who worked for Electrical General Corporation, Petitioner, which had workers' compensation insurance through Selective Insurance Company of America, Petitioner (together, "Electrical General"). LaBonte suffered an accidental personal injury to his back at work when he caught and pushed a large ladder that had been falling down. LaBonte filed a claim for workers' compensation and multiple Issues[1] with the Commission, seeking temporary total disability benefits and temporary partial disability benefits, both of which the Commission awarded.

Later, LaBonte was injured outside of the workplace in an unrelated matter. Specifically, a law enforcement officer initiated a traffic stop of a vehicle that LaBonte had been driving outside the course of his employment. According to LaBonte, during the traffic stop, the law enforcement officer grabbed him and pushed him down onto the vehicle, causing his existing back pain to be aggravated.

LaBonte filed Issues with the Commission again, seeking additional temporary total disability benefits. The Commission issued an Order denying LaBonte's request, observing that he had been "involved in a subsequent event on" the date of the incident with the law enforcement officer. LaBonte filed Issues with the Commission again, this

---

[1]"After [a] claim [for workers' compensation] has commenced, any party may raise an issue by filing [] Issues[.]" Md. Code Regs. ("COMAR") 14.09.03.02B. The issues that a party may raise by filing Issues include "[w]hether the employee is entitled to temporary partial and temporary total disability benefits" and "[t]he nature and extent of a permanent disability to specified body parts[.]" COMAR 14.09.03.02C(13), (14).

time seeking permanent partial disability benefits. In an Award of Compensation, the Commission awarded LaBonte permanent partial disability benefits, finding that his disability was partly due to his accidental personal injury—*i.e.*, his work-related injury—and partly due to "pre-existing and subsequent conditions[.]"

Years later, LaBonte filed a Petition to Reopen[2] with the Commission, alleging that his back condition had worsened, and requesting additional permanent partial disability benefits. The Commission granted the Petition to Reopen, but found that there had not been a worsening of LaBonte's back condition that was causally related to his accidental personal injury because the Commission's previous Order and Award of Compensation established a "subsequent intervening event" that broke the "causal nexus" between LaBonte's accidental personal injury and his existing back condition.

LaBonte filed a Petition for Judicial Review. In the Circuit Court for Anne Arundel County, a jury found that LaBonte's accidental personal injury was the cause of the recent worsening of LaBonte's back condition. Electrical General noted an appeal, and the Court of Special Appeals affirmed, holding that the incident with the law enforcement officer did not preclude Electrical General's liability for the worsening of LaBonte's back condition.

Before us, Electrical General argues that, where an employee suffers both an

---

[2]"[T]he general practice before the Commission, when a claimant seeks a modification of an award, is to file a petition to reopen or for modification[.]" Buskirk v. C.J. Langenfelder & Son, Inc., 136 Md. App. 261, 268, 764 A.2d 857, 861 (2001). "[W]hen a petition to reopen to modify an award is based on a change in disability status, the petition must be filed within the five year period [after the last compensation payment] and allege a change in disability status, with a basis in fact, as opposed to merely alleging continuing medical treatment." Id. at 263-64, 764 A.2d at 858-59. In this case, it is undisputed that LaBonte filed the Petition to Reopen timely.

accidental personal injury that causes a permanent partial disability and a subsequent intervening event—*e.g.*, an injury sustained outside the course of employment—a finding that the employee has incurred a subsequent intervening event precludes the accidental personal injury from being the proximate cause of worsening of the disability. In other words, Electrical General asserts that a finding that an employee sustained a subsequent intervening injury forecloses an employer's further liability for permanent partial disability benefits and other workers' compensation benefits due to an alleged worsening of the employee's condition.

As explained below, in our view, Electrical General conflates the law that applies to a temporary disability with the law that applies to a permanent disability. Liability for a temporary disability depends on the injury that occurred last. See Martin v. Allegany Cty. Bd. of Cty. Comm'rs, 73 Md. App. 695, 700, 536 A.2d 132, 134 (1988). By contrast, liability for a permanent disability is to be apportioned among all of the injuries that caused the permanent disability, not just the injury that occurred last. See LE § 9-656. Applying these principles, we hold that, where the Commission has awarded permanent partial disability benefits based on an accidental personal injury or occupational disease and has also determined that the employee incurred a subsequent intervening event—*e.g.*, an injury sustained outside the course of employment—upon a request to reopen alleging worsening of the employee's medical condition, the employee is entitled to compensation for permanent partial disability for any portion of such disability that is caused by and reasonably attributable solely to the employee's accidental personal injury or occupational disease. Stated otherwise, where an employee has incurred both accidental personal injury

- 4 -

or occupational disease, and a subsequent intervening injury, and the Workers' Compensation Commission has apportioned permanent partial disability benefits for an accidental personal injury or occupational disease, the existence of a subsequent intervening event finding does not preclude the Commission from awarding additional permanent partial disability benefits for worsening of the employee's condition caused by and reasonably attributable solely to the accidental personal injury or occupational disease.

Further, the existence of a subsequent intervening event does not, *per se*, preclude an employer's liability for workers' compensation benefits. An employer may be liable for workers' compensation benefits where an employee demonstrates that a worsening of the employee's medical condition was caused by an accidental personal injury or occupational disease. And, the issues of whether an accidental personal injury or occupational disease, or a subsequent intervening event, caused a worsening of an employee's medical condition, and whether, for purposes of permanent partial disability benefits, a worsening of an employee's medical condition was reasonably attributable solely to an accidental personal injury or occupational disease, are factual matters for the Commission to determine in each individual case.

## BACKGROUND

### Accidental Personal Injury, Claim, and Initial Issues

On September 2, 2004, while on the job, LaBonte and a helper maneuvered a 40-foot ladder that weighed more than 300 pounds. The ladder started to fall, and LaBonte caught it and pushed it back up. LaBonte felt something shift in his back. Later, LaBonte began experiencing constant back pain, and it was determined that LaBonte had suffered a

herniated disc.

LaBonte was either not working, or working in "a light duty position," throughout nearly all of the period from September 13, 2004 to December 19, 2006. During that period, on May 24, 2006, LaBonte underwent back surgery.

On September 27, 2004, LaBonte filed a claim for workers' compensation with the Commission, requesting temporary total disability benefits, medical treatment, and medical expenses. On June 15, 2005, the Commission conducted a hearing. In an Award of Compensation dated June 22, 2005, the Commission found that, on September 2, 2014, LaBonte had suffered an accidental personal injury that caused a disability. The Commission did not specify the type of disability that LaBonte's accidental personal injury had caused. The Commission reserved on the issue of temporary total disability benefits because no medical documentation had been submitted. The Commission granted LaBonte's requests for medical treatment and medical expenses.

LaBonte filed Issues with the Commission, requesting additional medical treatment in the form of a neurological consult; temporary partial disability benefits from March 18, 2005 to October 21, 2005; and temporary total disability benefits from September 13, 2004 to October 24, 2004, from November 23, 2004 to December 30, 2004, from February 24, 2005 to March 17, 2005, and from October 21, 2005 onward. On October 21, 2005, the Commission conducted a hearing. In an Order dated November 10, 2005, the Commission granted LaBonte's request for additional medical treatment, and awarded LaBonte all of the temporary partial disability benefits that he had requested. The Commission reserved on LaBonte's request for temporary total disability benefits from October 21, 2005 onward;

denied LaBonte's request for temporary total disability benefits from March 8, 2005 to March 17, 2005; and awarded LaBonte all of the other temporary total disability benefits that he had requested.

LaBonte filed Issues with the Commission a second time, requesting additional medical treatment that his physician had recommended, and temporary total disability benefits from January 5, 2006 onward. On March 10, 2006, the Commission conducted a hearing. In an Order dated March 15, 2006, the Commission granted LaBonte's request for additional medical treatment, and awarded LaBonte temporary total disability benefits starting on January 5, 2006, and continuing as long as he remained temporarily totally disabled as a result of his accidental personal injury.

LaBonte filed Issues with the Commission a third time, requesting temporary total disability benefits from March 18, 2005 to October 21, 2005, and temporary partial disability benefits from March 18, 2005 onward. On June 29, 2006, the Commission conducted a hearing. In an Order dated July 20, 2006, the Commission awarded LaBonte all of the temporary total disability benefits that he had requested, and denied LaBonte's request for temporary partial disability benefits.

### Incident with the Law Enforcement Officer and Subsequent Issues

On December 31, 2006, a law enforcement officer initiated a traffic stop of a vehicle that LaBonte had been driving outside the course of employment. LaBonte was unable to perform sobriety tests to the officer's satisfaction, and the officer arrested and handcuffed LaBonte. According to LaBonte, the handcuffs came loose, and the officer grabbed LaBonte and pushed him down onto the vehicle. According to LaBonte, after the incident

with the law enforcement officer, his back pain was aggravated.

On January 15, 2007, a doctor recommended that LaBonte be placed on off-work status, and scheduled another appointment for February 5, 2007. Sometime after the February 5, 2007 appointment, LaBonte returned to work. LaBonte was prescribed medication and exercise, but no additional surgery was performed on his back.

LaBonte filed Issues with the Commission a fourth time, requesting temporary total disability benefits from January 4, 2007 to March 9, 2007 and additional medical treatment in the form of lumbar epidural injections. On March 9, 2007, the Commission conducted a hearing. In an Order dated March 30, 2007, the Commission found that LaBonte's need for lumbar epidural injections was not causally related to his accidental personal injury. The Commission further stated that LaBonte had been "involved in a subsequent event on December 31, 2006"—*i.e.*, the date of the incident with the law enforcement officer—and denied LaBonte's requests for temporary total disability benefits and additional medical treatment.

LaBonte filed Issues with the Commission a fifth time, requesting temporary total disability benefits from February 11, 2006 to March 20, 2006; temporary partial disability benefits from October 6, 2006 to December 19, 2006; permanent partial disability benefits from December 20, 2006 onward; and expenses for medical treatment that he had received between January 15, 2007 and March 5, 2007. On October 4, 2007, the Commission conducted a hearing. In an Award of Compensation dated October 15, 2007, the Commission found that LaBonte had "overall 30% industrial [permanent partial] disability to the body due to an injury to the back; 20% is due to [his] accidental [personal] injury,

and 10% is causally connected to pre-existing and subsequent conditions[.]" The Commission awarded LaBonte all of the temporary total disability benefits and temporary partial disability benefits that he had requested. The Commission awarded LaBonte permanent partial disability benefits in the form of $247 weekly, starting on December 20, 2006, and continuing for 100 weeks, and denied LaBonte's request for medical expenses that had been incurred between January 15, 2007 and March 5, 2007.

**Petition to Reopen**

Approximately five years later, on October 10, 2012, LaBonte filed a Petition to Reopen with the Commission, alleging that his back condition had worsened, and requesting additional medical treatment, payment of medical expenses that he had incurred on February 16, 2012, and additional permanent partial disability benefits. The Commission granted the Petition to Reopen. On January 16, 2013, the Commission conducted a hearing. In an Order dated January 24, 2013, the Commission found that there had not been a worsening of LaBonte's back condition that was causally related to his accidental personal injury because the Commission's Order dated March 30, 2007 and its Award of Compensation dated October 15, 2007 "establish[ed] a subsequent intervening event [that] breaks the causal nexus between the accidental [personal] injury and the [existing back] condition." The Commission denied LaBonte's requests for additional medical treatment, medical expenses, and additional permanent partial disability benefits.

**Proceedings in the Circuit Court**

LaBonte filed a Petition for Judicial Review in the Circuit Court for Prince George's County. The case was transferred to the Circuit Court for Anne Arundel County ("the

circuit court").

Electrical General filed a Motion for Summary Judgment, contending that, as a matter of law, the Commission's orders precluded a finding that LaBonte's accidental personal injury caused his back condition's worsening. The circuit court denied the Motion for Summary Judgment.

At a jury trial, in a video deposition, Michael Franchetti, M.D., testified as an expert witness for LaBonte in the fields of orthopedic surgery and medicine. Dr. Franchetti testified that he examined LaBonte at his counsel's request on two occasions—first on May 22, 2007, and second on September 18, 2012.[3] During the first examination, Dr. Franchetti determined that LaBonte had 43% "whole person impairment due to" his accidental personal injury. During the second examination, Dr. Franchetti determined that LaBonte's whole person impairment had increased to 53%. Dr. Franchetti testified that the incident with the law enforcement officer did not result in any permanent worsening of LaBonte's back condition, and that LaBonte's back condition was causally related to his accidental personal injury.[4]

In another video deposition, Edward R. Cohen, M.D., testified as an expert witness for Electrical General in the fields of orthopedic surgery and medicine. Dr. Cohen testified

---

[3]During the video deposition, the date on which Dr. Franchetti conducted the second examination of LaBonte is identified as both September 8, 2012 and September 18, 2012; however, the date on which the second examination occurred is of no consequence to the outcome of this case.

[4]After LaBonte rested, Electrical General moved for judgment, contending that the incident with the law enforcement officer severed the causal relationship between LaBonte's accidental personal injury and his disability. The circuit court denied the motion.

that he examined LaBonte at Electrical General's request on two occasions—first in 2004, and second in 2014. Dr. Cohen opined that, in light of the incident with the law enforcement officer, LaBonte's existing back condition was not causally related to his accidental personal injury.

Using a special verdict sheet, the jury found that LaBonte's existing back condition was causally related to his accidental personal injury; that 100% of the worsening of LaBonte's permanent partial disability since October 15, 2007 was due to his accidental personal injury; that LaBonte's request for medical treatment was reasonable, necessary, and causally related to his accidental personal injury; and that LaBonte's request for medical expenses that he had incurred on February 16, 2012 was reasonable, necessary, and causally related to his accidental personal injury.

The circuit court reversed the Commission's January 24, 2013 order and remanded with instructions to issue an order consistent with the jury's verdict. Electrical General filed a motion for judgment notwithstanding the verdict, which the circuit court denied. Electrical General noted an appeal.

**Opinion of the Court of Special Appeals**

The Court of Special Appeals affirmed the circuit court's judgment, holding that the incident with the law enforcement officer "did not, *per se*, preclude further liability on the part of [Electrical General] for the permanent partial injury [that LaBonte] sustained on the job." Elec. Gen. Corp. v. LaBonte, 229 Md. App. 187, 208, 196, 144 A.3d 856, 868, 861, reconsideration denied (Sept. 28, 2016). The Court of Special Appeals concluded that "there was sufficient proof that [LaBonte]'s back condition was caused by his [accidental

- 11 -

personal injury] and not by the [] incident with the [law enforcement] officer." Id. at 197, 144 A.3d at 862 (citation omitted). The Court of Special Appeals explained that "permanent disability benefits, unlike temporary disability benefits, can be caused by both an initial [accidental personal injury] and a subsequent accident so as to preserve the liability of the employer for that portion of the disability that is attributable to the initial accident." Id. at 201, 144 A.3d at 864.[5]

Electrical General filed a motion for reconsideration, contending that the opinion of the Court of Special Appeals was internally inconsistent and conflicted with precedent. The Court denied the motion.

**Petition for a Writ of *Certiorari***

Electrical General petitioned for a writ of *certiorari*, raising the following four issues:

> 1. Whether the previously determined finding that [LaBonte] sustained a subsequent intervening accident barred any further liability of [Electrical General] for workers' compensation benefits due to a prior [accidental personal] injury?

> 2. Whether the Circuit Court erred by allowing the jury to consider whether [LaBonte] sustained a subsequent intervening accident to his back

---

[5]The Court of Special Appeals also concluded that the Commission's finding of a subsequent intervening event, *i.e.*, the incident with the law enforcement officer, "did not, under the doctrine of collateral estoppel, preclude the jury from considering whether [LaBonte]'s current back condition is causally connected to his [accidental personal injury]"; that the circuit court did not abuse its discretion in submitting to the jury the issue of whether LaBonte's back condition's worsening was causally related to his accidental personal injury; and that the circuit court did not err in allowing the jury to decide issues related to apportionment and the reasonableness and necessity of LaBonte's requests for medical treatment and payment of medical expenses. See LaBonte, 229 Md. App. at 204, 206-07, 144 A.3d at 866, 867-68. As discussed below in Footnote 6, Electrical General has not briefed these issues in this Court.

because litigation of that issue was precluded under the doctrine of collateral estoppel?

3. Whether the Circuit Court erred in submitting the jury question of whether [LaBonte]'s back condition was causally related to the [accidental personal] injury because the question was insufficient to resolve the factual disputes between the parties and improperly shifted the burden of proof to [Electrical General]?

4. Whether the Circuit Court erred by allowing the jury to decide issues that were not previously decided by the [] Commission?

This Court granted the petition. See Elec. Gen. Corp. v. LaBonte, 450 Md. 662, 150 A.3d 818 (2016).[6]

## DISCUSSION

### The Parties' Contentions

Electrical General contends that it is not liable for permanent partial disability benefits or any other workers' compensation benefits due to the worsening of LaBonte's back condition because the Commission previously found the existence of a subsequent intervening act. Electrical General argues that it is undisputed that LaBonte sustained a subsequent intervening accident on December 31, 2006, and that the Commission found as much in its Order dated March 30, 2007 and its Award of Compensation dated October 15,

---

[6]This Court granted the petition as to all of the questions presented. Nonetheless, in its brief, Electrical General addresses only the first question presented—i.e., the issue regarding whether the incident with the law enforcement officer barred liability—and did not brief the questions presented regarding collateral estoppel, the burden of proof, or issues being submitted to the jury that were not previously decided by the Commission. Because Electrical General has not briefed the second, third, and fourth questions presented, we do not address them. Cf. Menefee v. State, 417 Md. 740, 746 n.9, 12 A.3d 153, 156 n.9 (2011) ("Because the issue relating to the limitations period for submitting a claim to the Treasurer was not briefed by either party, it is not, at present, before this Court." (Citation omitted)).

2007. Electrical General asserts that, because LaBonte suffered an accidental personal injury, and the Commission found that he incurred a subsequent injury outside the course of employment, the subsequent intervening accident severed the causal nexus between LaBonte's disability and the accidental personal injury.

As such, Electrical General maintains that, although it was liable for the portion of LaBonte's back condition that was caused by his accidental personal injury, the subsequent intervening event—namely, the incident with the law enforcement officer—precluded its liability for any worsening of LaBonte's back condition. Electrical General contends that the Commission's Order dated March 30, 2007 and its Award of Compensation dated October 15, 2007 constituted the law of the case because no party petitioned for judicial review of either decision. According to Electrical General, once the incident with the law enforcement officer was found to be a subsequent intervening event, as a matter of law, that event became the cause of any alleged additional disability.

LaBonte requests that the Court affirm the decision of the Court of Special Appeals because his back condition's worsening was independent of the subsequent event. LaBonte contends that, where an accidental personal injury causes a permanent disability, the finding of a subsequent intervening event does not discharge the employer from any further responsibility under the Workers' Compensation Act. LaBonte argues that the determination of a subsequent intervening event does not sever the causal relationship between the accidental personal injury and any worsening of the employee's medical condition. LaBonte notes that, unlike liability for temporary disability benefits, liability for permanent disability benefits may be apportioned among multiple injuries.

Specifically, LaBonte observes that, under LE § 9-656(a), where it appears that an employee's permanent disability is partly due to an accidental personal injury and partly due to a preexisting condition, the Commission must determine the proportion of the permanent disability that is reasonably attributable to the accidental personal injury, and the proportion of the permanent disability that is reasonably attributable to the preexisting condition. LaBonte asserts that, irrespective of the Commission's Order dated March 30, 2007 and its Award of Compensation dated October 15, 2007, the jury had the authority to determine how much, if any, of the worsening of his back condition was caused by his accidental personal injury. LaBonte maintains that the evidence adduced at trial supported the jury's finding that his accidental personal injury was the only cause of his back condition's worsening.

LaBonte contends that adopting Electrical General's position would create a new legal rule and allow employers and insurers to escape liability for accidental personal injuries in situations in which a subsequent intervening event is not the cause of an employee's ongoing or worsening injury. LaBonte argues that such a result would be contrary to the Workers' Compensation Act's language and remedial purpose, which is to provide compensation for lost earning capacity that results from accidental personal injuries.

**Standard of Review**

In an action for judicial review, this Court reviews the administrative agency's decision, not the decision of the circuit court or the Court of Special Appeals. See Hollingsworth, 448 Md. at 654, 141 A.3d at 93. Although "the decision of the Commission

is presumed to be prima facie correct[,]" LE § 9-745(b)(1), "this presumption does not extend to questions of law, which [this Court] review[s] independently." Hollingsworth, 448 Md. at 655, 141 A.3d at 94 (citation and internal quotation marks omitted); see also LE § 9-745(c)(3) ("The court shall determine whether the Commission . . . misconstrued the law and facts applicable in the case decided."). This Court gives some deference to the Commission's interpretation of the Workers' Compensation Act "unless its conclusions are based upon an erroneous conclusion of law." Holmes, 416 Md. at 359, 7 A.3d at 21.

The goal of statutory interpretation is to effectuate the General Assembly's intent. See Hollingsworth, 448 Md. at 655, 141 A.3d at 94 (citation omitted). If the ordinary and natural meaning of a statute's language makes the General Assembly's intent clear, the Court applies the statute's language. See id. at 655, 141 A.3d at 94. Because the Workers' Compensation Act is a remedial statute, if its language is ambiguous, the Court construes the Act "as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." Id. at 655, 141 A.3d at 94 (citation and internal quotation marks omitted). Where the Workers' Compensation Act's language is unambiguous, however, the Court may not create an ambiguity to interpret the Act more favorably to injured employees. See id. at 655-56, 141 A.3d at 94.

**Workers' Compensation Act**

LE § 9-656, part of the Workers' Compensation Act, provides for apportionment of liability for permanent disability benefits as follows:

> (a) *Determination by Commission.*—If it appears that a permanent disability of a covered employee following an accidental personal injury or occupational disease is due partly to the accidental personal injury or

occupational disease and partly to a preexisting disease or infirmity, the Commission shall determine:

(1) the proportion of the disability that is reasonably attributable to the accidental personal injury or occupational disease; and

(2) the proportion of the disability that is reasonably attributable to the preexisting disease or infirmity.

(b) *Payment of compensation.*—The covered employee:

(1) is entitled to compensation for the portion of the disability of the covered employee that is reasonably attributable solely to the accidental personal injury or occupational disease; and

(2) is not entitled to compensation for the portion of the disability that is reasonably attributable to the preexisting disease or infirmity.

LE § 9-655(1) and (2) state: "This Part VIII of this subtitle[, which includes LE § 9-656,] does not apply to: (1) a temporary partial disability; [or] (2) a temporary total disability[.]" (Paragraph break omitted).

LE § 9-736(b) provides for continuing jurisdiction and authorizes the Commission to modify its findings as follows:

(1) The Commission has continuing powers and jurisdiction over each claim under this title.

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the latter of:

(i) the date of the accident;

(ii) the date of disablement; or

(iii) the last compensation payment.

**Causation**

In <u>Reeves Motor Co. v. Reeves</u>, 204 Md. 576, 582-83, 105 A.2d 236, 239-40 (1954), a case involving an initial determination of permanent partial disability, this Court reversed a jury's award of permanent partial disability benefits for an accidental personal injury, concluding that a subsequent surgery that resulted in the employee's further injury broke the causal connection between the accidental personal injury and the permanent partial disability. This Court observed that an accidental personal injury is the proximate cause of an employee's disability where the accidental personal injury could have caused the employee's disability and "no other efficient cause has intervened[.]" <u>Id.</u> at 581, 105 A.2d at 239. This Court concluded that an accidental personal injury is not the proximate cause of an employee's disability where the employee's disability "ensues from some hazard to which [the employee] would have been equally exposed apart from his [or her] employment." <u>Id.</u> at 582, 105 A.2d at 239 (citation omitted). In <u>Reeves</u>, <u>id.</u> at 579, 105 A.2d at 238, an employee incurred an accidental personal injury when he dislocated his shoulder while working in a garage, and was compensated for a week that he missed from work. Afterward, the employee dislocated his shoulder several more times, both in and outside the course of employment, with the most recent shoulder dislocation occurring at the workplace. <u>See id.</u> at 579-80, 105 A.2d at 238. The employee's physician treated him for his most recent work-related shoulder dislocation. <u>See id.</u> at 580, 105 A.2d at 238. After the treatment, there was no limitation of movement in the employee's shoulder, which was in approximately the same condition that it had been before his most recent work-related shoulder dislocation. <u>See id.</u> at 580, 105 A.2d at 238. Subsequently, the

employee underwent surgery on his shoulder, which became partially immobilized as a result. See id. at 580-81, 105 A.2d at 239. The employee filed a claim for workers' compensation as to his most recent work-related shoulder dislocation, seeking both temporary total disability benefits and permanent partial disability benefits. See id. at 582-83, 105 A.2d at 239-40. The Commission denied the employee's claim. See id. at 578, 105 A.2d at 237. The employee appealed. See id. at 578, 105 A.2d at 237. A jury found that the employee's most recent work-related shoulder dislocation had caused his temporary total disability and his permanent partial disability. See id. at 578, 105 A.2d at 237.

This Court reversed,[7] concluding that, in light of the evidence concerning the intervening surgery, the trial court had erred in not withdrawing from the jury the issue of whether the employee's most recent work-related shoulder dislocation had caused his permanent partial disability. See Reeves, 204 Md. at 583, 105 A.2d at 240. This Court observed that there was no evidence that the employee's most recent work-related shoulder dislocation had caused his permanent partial disability, as the employee's expert witness, his physician, testified that his most recent work-related shoulder dislocation did not cause his condition after the surgery. See id. at 582-83, 105 A.2d at 239-40. Additionally, the expert did not testify that the employee's most recent work-related shoulder dislocation necessitated the surgery. See id. at 582, 105 A.2d at 239. We noted: "This is not the case of reopening an old claim for injury wherein the claimant's condition has become worse or

_____

[7]At the time, the Court of Special Appeals did not exist.

- 19 -

new disability has developed." Id. at 582, 105 A.2d at 239. In sum, in Reeves, id. at 582-83, 105 A.2d at 239-40, this Court found that there was no evidence of a causal connection between the accidental personal injury on which the employee relied and the surgery and subsequent disability, and concluded that the trial court erred in allowing the issue of permanent partial disability to go to the jury.

In Martin, 73 Md. App. at 700, 536 A.2d at 134, the Court of Special Appeals held that the principle "[t]hat benefits are to be awarded for a temporary disability without regard to pre-existing disease or infirmity makes clear that it is the final accident contributing to the disability which is to serve as the basis for liability." In Martin, id. at 73 Md. App. at 696, 536 A.2d at 132-33, an employee suffered an accidental personal injury involving his back and filed a claim for workers' compensation, and the Commission awarded him temporary total disability benefits. The employee started a new job with a different employer, suffered two more accidental personal injuries involving his back, and filed a second claim for workers' compensation. See id. at 696, 536 A.2d at 132-33. The Court of Special Appeals observed that the record on appeal in Martin did not include a copy of the Commission's order as to the employee's second claim. See id. at 696, 536 A.2d at 133. Accordingly, it was unknown whether the Commission awarded the employee any temporary total disability benefits as to his second claim. See id. at 696, 536 A.2d at 133. In any event, the Commission's order as to the employee's second claim was appealed to a trial court, in which a jury found that the employee's temporary total disability was causally related to all three of his accidental personal injuries. See id. at 696-97, 536 A.2d at 133. The trial court remanded the case to the Commission with instructions to determine

the amount of compensation, if any, to which the employee was entitled. See id. at 697, 536 A.2d at 133. No party appealed from the proceedings in the trial court. See id. at 697, 536 A.2d at 133. On remand, based on the employee's first accidental personal injury, the Commission awarded the employee temporary total disability benefits, to be paid entirely by the employee's first employer. See id. at 697, 536 A.2d at 133. The employee's first employer sought judicial review. See id. at 697, 536 A.2d at 133. The trial court granted summary judgment in favor of the employee's first employer, and the Court of Special Appeals affirmed. See id. at 698, 701, 536 A.2d at 133, 135.

The Court of Special Appeals concluded that the jury's findings of a causal relationship between each of the employee's three accidental personal injuries and his temporary total disability became the law of the case because no party appealed from the jury's verdict. See id. at 698-99, 536 A.2d at 133. Next, the Court of Special Appeals held that the Commission's award of temporary total disability benefits was inconsistent with the jury's finding that the employee's temporary total disability was causally related to his third accidental personal injury, i.e., an injury that occurred while the employee was working for his second employer. See id. at 700, 536 A.2d at 134. The Court of Special Appeals noted that, because the case involved a temporary disability rather than a permanent disability, the award of disability benefits was not to be apportioned to account for all three accidental personal injuries. See id. at 699, 536 A.2d at 134. The Court of Special Appeals stated that, given that an award of temporary disability benefits is not to be apportioned to assess for a preexisting disease or infirmity, it follows that the last accident that contributes to a temporary disability determines which employer is liable.

See id. at 700, 536 A.2d at 134. As such, the Court of Special Appeals determined that the employee's second employer was liable for his disability because he was working for his second employer when he suffered his third and final accidental personal injury. See id. at 700, 536 A.2d at 134. The Court of Special Appeals explained that, although the jury found that the employee's temporary total disability was causally related to his first accidental personal injury, the same was not the proximate cause of his temporary total disability because the employee's later two accidental personal injuries were intervening efficient causes. See id. at 700-01, 536 A.2d at 135.

As to causation, Maryland Civil Pattern Jury Instruction 30:12, which applies to workers' compensation cases and was given at trial in this case, states:

> In order to be compensable there must be proof that the injury could have been caused by the accident and nothing else after the accident occurred to cause the injury.
>
> When an Employee has an injury that arises out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment.

**Analysis**

Here, we conclude that, where the Commission has awarded permanent partial disability benefits based on an accidental personal injury, and the Commission has also determined that the employee has incurred a subsequent intervening event—*e.g.*, an injury sustained outside the course of employment—the employer may be liable for a worsening of the employee's condition that is caused by and reasonably attributable solely to the accidental personal injury. Where it appears that an employee's permanent disability was caused in part by an accidental personal injury and in part by a preexisting disease, LE §

- 22 -

9-656(a) directs the Commission to determine the proportion of the disability that is reasonably attributable to the accidental personal injury, and the proportion of the disability that is reasonably attributable to the preexisting disease. Under LE § 9-656(b)(1), the employee is entitled to benefits for the portion of the permanent disability that is reasonably attributable solely to the accidental personal injury. It is entirely logical that an employer and its insurer are liable for the portion of a worsening of an employee's medical condition that was caused by, and is reasonably attributable solely to, an accidental personal injury. The issues of whether an accidental personal injury or a subsequent intervening event caused a worsening of an employee's medical condition, and whether, for purposes of permanent partial disability benefits, the worsening of the employee's medical condition was reasonably attributable solely to the accidental personal injury, are factual matters for the Commission to determine in each individual case.

It is evident that, in this case, the Commission interpreted its Order dated March 30, 2007—in which it stated that LaBonte had been "involved in a subsequent event"—and its Award of Compensation dated October 15, 2007—in which it apportioned LaBonte's permanent partial disability, with 10% of the disability as being "causally connected to pre-existing and subsequent conditions"—to be findings of a circumstance that, as a matter of law, precluded further liability on the part of Electrical General for worsening of LaBonte's medical condition.[8] Indeed, in its Order dated January 24, 2013, the Commission stated

_____

[8]The parties have at various times have referred to the Commission's finding in denying workers' compensation benefits due to the worsening of LaBonte's medical condition as the finding of a subsequent injury, subsequent intervening accident,

- 23 -

that the previous Order and Award "establish[ed] a subsequent intervening event which breaks the causal nexus between the accidental [personal] injury and the current condition." Despite the Commission's determination, we unequivocally hold that, if an employee incurs a subsequent intervening event—*e.g.*, an injury sustained outside the course of employment—further liability of an employer for permanent partial disability and other workers' compensation benefits is not precluded as a matter of law. An employer may be liable for permanent partial disability benefits for a worsening of the employee's condition that is caused by and reasonably attributable solely to the accidental personal injury, and liable for other workers' compensation benefits such as medical treatment and medical expenses subject to a case-by-case determination.

The analysis that applies to the determination of permanent disability benefits significantly differs from the one that applies to a determination of temporary disability benefits. As LE § 9-655(1) and (2) provide, LE § 9-656 is inapplicable to temporary disability benefits. Instead of being apportioned among multiple injuries under LE § 9-656, liability for a temporary disability depends entirely on the injury that occurred last. In other words, as the Court of Special Appeals stated in <u>Martin</u>, 73 Md. App. at 700, 536 A.2d at 134, "it is the final accident contributing to [a temporary] disability which is to serve as the basis for liability." The exclusive focus on the injury that occurred last, however, has no application in a determination of liability for a permanent disability, as to

subsequent intervening event, and subsequent intervening injury. The Commission labelled the circumstance a subsequent intervening event. For purposes of this opinion, we use the terms subsequent intervening event and subsequent intervening injury.

- 24 -

which LE § 9-656 provides for apportionment of liability among multiple injuries. Simply put, the "final accident" rule that the Court of Special Appeals articulated in Martin, 73 Md. App. at 700, 536 A.2d at 134, applies only to the determination of temporary disability benefits, not to the assessment of permanent partial disability benefits. We are unpersuaded by Electrical General's reliance on Martin for the proposition that the final accident that contributes to a worsening of an employee's medical condition serves as the basis for liability for permanent partial disability benefits.

In the Petition to Reopen, LaBonte requested not only a finding of apportionment of permanent partial disability benefits for worsening of his medical condition, but also medical treatment. On brief, Electrical General contends that medical treatment is not apportionable, and that its liability for medical treatment is precluded by the Commission's finding of a subsequent intervening event. The only case upon which Electrical General relies in support of its argument is J & M Const. Co. v. Braun, 44 Md. App. 602, 609, 410 A.2d 607, 611 (1980), in which the Court of Special Appeals stated that LE § 9-656's predecessor "provide[d] for apportionment of only [p]ermanent disability." In J & M Const., id. at 603, 605, 410 A.2d at 608, 609, an employee suffered two separate accidental personal injuries while working for two different employers, and the second employer and its insurer contended that the first employer's insurer should have contributed to the employee's vocational rehabilitation expenses. The Court of Special Appeals rejected this contention on the ground that it had not been found that the employee had a permanent disability as a result of the second accidental personal injury; instead, the Commission had found that the employee had a temporary disability. See id. at 609, 603-04, 410 A.2d at

- 25 -

611, 608. J & M Const. stands for the principle that, under LE § 9-656, liability for permanent disability benefits is apportionable, while liability for temporary disability benefits is not. As such, J & M Const. does not support Electrical General's proposition that medical treatment cannot be awarded where an employee demonstrates that a worsening of his or her medical condition was caused by an accidental personal injury or occupational disease.

In the Order dated January 24, 2013, the Commission found a subsequent intervening event and denied authorization for medical treatment and the payment of medical expenses. According to the Commission, the prior Order and Award of Compensation "establish[ed] a subsequent intervening event which breaks the causal nexus between the accidental injury and the current condition." In light of our holding that the subsequent intervening event does not, *per se*, preclude an employer's liability due to the worsening of an employee's medical condition, the summary denial of medical treatment and medical expenses is not warranted. The question is not whether medical treatment can be apportioned; the question is whether a worsening of an employee's medical condition was caused by the accidental personal injury, and, thus, necessitated additional medical treatment and expenses.

Electrical General is also incorrect in contending that, here, the Commission's Order dated March 30, 2007 and its Award of Compensation dated October 15, 2007 became the law of the case because there was no petition for judicial review of either decision. Generally, "[t]he law of the case doctrine is one of appellate procedure. Once an appellate court rules upon a question presented on appeal, litigants and lower courts become bound

by the ruling, which is considered to be the law of the case." Dep't of Pub. Safety & Corr. Servs. v. Doe, 439 Md. 201, 216, 94 A.3d 791, 800 (2014) (citation and internal quotation marks omitted). The doctrine of the law of the case typically does not apply to a decision of a trial court because, "'as a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court.'" Scott v. State, 379 Md. 170, 184, 840 A.2d 715, 723 (2004) (quoting Gertz v. Anne Arundel Cty., 339 Md. 261, 273, 661 A.2d 1157, 1163 (1995)).[9] Similarly, in Gertz, 339 Md. at 272, 661 A.2d at 1163, this Court held that a trial judge's order did not become the law of the case, and thus did not preclude another trial judge from consideration of a legal issue.

Electrical General provides no authority, and we know of none, in which the doctrine of the law of the case has been applied to an award or order of the Commission. Indeed, at oral argument, when asked by the Court to explain Electrical General's contention regarding the doctrine of the law of the case, tellingly, without addressing the doctrine of the law of the case, Electrical General's counsel responded that the doctrine of

---

[9] The general principle that a trial judge's ruling does not bind another trial judge in the same case is fully consistent with the Court of Special Appeals's holding in Martin, 73 Md. App. at 698, 536 A.2d at 133-34, in which the Court concluded that the doctrine of the law of the case applied to a jury's findings of a causal relationship between an employee's accidental personal injuries and his disability. In Martin, id. at 697, 536 A.2d at 133, after the jury made its finding, the trial court remanded the case to the Commission so that the employee could prove the amount of benefits to which he was entitled. The Court of Special Appeals explained that, on remand, "[t]he Commission could not ignore or amend the jury's finding. There was no need for the Commission to take evidence on a matter [that] had already been decided for it by the circuit court, a higher tribunal." Id. at 698, 536 A.2d at 134. In other words, the Commission was bound by the jury's finding of a causal relationship between the employee's accidental personal injuries and his disability because the jury's finding essentially constituted a decision of a higher tribunal.

collateral estoppel applied to the issue of whether the incident with the law enforcement officer was a subsequent intervening event because neither party sought judicial review of the Commission's March 30, 2007 Order and its October 15, 2007 Award of Compensation. When asked whether a Maryland appellate court had ever applied the doctrine of the law of the case in a workers' compensation case to enforce orders or awards of the Commission, Electrical General's counsel identified the case of <u>Criminal Injuries Comp. Bd. v. Gould</u>, 273 Md. 486, 331 A.2d 55 (1975). In <u>Gould</u>, <u>id.</u> at 513, 331 A.2d at 72, this Court observed that the Criminal Injuries Compensation Board conceded that it was estopped from contending that its decision was not subject to judicial review because the Board's counsel had informed the opposing party's counsel that the Board's decision was subject to judicial review.

For obvious reasons, this Court's holding in <u>Gould</u> does not support Electrical General's contention regarding the doctrine of law of the case. <u>Gould</u> did not involve an issue as to the doctrine of the law of the case, and this Court did not mention the doctrine anywhere in <u>Gould</u>. Nor does the holding in <u>Gould</u> support the proposition that an award or order of the Commission can have preclusive effect under the doctrine of collateral estoppel. Put simply, nowhere in <u>Gould</u> did this Court indicate that the doctrine of collateral estoppel applied to an award or order of the Commission.

In any event, the doctrine of the law of the case and the doctrine of collateral estoppel are distinct. The doctrine of the law of the case precludes a party from re-litigating an issue of which an appellate court in the same case has already disposed. See <u>Doe</u>, 439 Md. at 216, 94 A.3d at 800. By contrast, "[t]he doctrine of collateral estoppel precludes a

- 28 -

party from re-litigating a factual issue that was essential to a valid and final judgment against the same party in a prior action." Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. The Fund for Animals, Inc., 451 Md. 431, 463-64, 153 A.3d 123, 142 (2017) (citation and internal quotation marks omitted). The doctrine of collateral estoppel applies where: (1) the issue that was decided in a prior adjudication is identical to the issue that the party seeks to re-litigate; (2) the court issued a final judgment on the merits; (3) the party that seeks to re-litigate the issue was either a party to, or in privity with a party to, the prior adjudication; and (4) the party that seeks to re-litigate the issue was given a fair opportunity to be heard on the issue. See id. at 464, 153 A.3d at 142.[10]

The Workers' Compensation Act negates both Electrical General's contention regarding the doctrine of the law of the case in its brief, and its contention regarding the doctrine of collateral estoppel at oral argument. LE § 9-736(b)(1) provides that "[t]he Commission has continuing powers and jurisdiction" in workers' compensation cases. LE § 9-736(b)(2) allows the Commission, within a certain time period, to "modify any finding or order as the Commission considers justified." Under LE § 9-736(b), the Commission is not bound to follow its previous awards and orders; to the contrary, the Commission has the express authority to modify the same.

---

[10]As explained earlier, Electrical General has not briefed the issue of the applicability of the doctrine of collateral estoppel in this case. Normally, this Court does not address issues that were not briefed. See, e.g., HNS Dev., LLC v. People's Counsel for Baltimore Cty., 425 Md. 436, 459, 42 A.3d 12, 26 (2012) ("The brief provides only sweeping accusations and conclusory statements. After reviewing [the] brief, we are disinclined to search for and supply [the party] with authority to support its bald and undeveloped allegation[.]").

LE § 9-736(b) unequivocally supports our holding that, where the Commission has determined an employee's permanent partial disability and apportioned between an accidental personal injury and a subsequent intervening injury, if the employee's condition worsens, the Commission is not precluded from awarding workers' compensation benefits due to the accidental personal injury. In its March 30, 2007 Order, the Commission properly denied LaBonte's request for additional temporary total disability benefits because the injury that occurred last—*i.e.*, the injury that resulted from the incident with the law enforcement officer—precluded liability for temporary disability benefits, as opposed to permanent disability benefits. In its October 15, 2007 Award of Compensation, because LaBonte had sought permanent disability benefits instead of temporary disability benefits, the Commission properly determined the portion of his back condition that was due to his accidental personal injury. Nothing in either of these two orders precluded the Commission from determining at a later date how much, if any, a worsening of LaBonte's back condition was due to his accidental personal injury. Indeed, LE § 9-656(a) empowered the Commission to make such a determination, and LE § 9-736(b)(2) authorized the Commission to modify its previous finding of the proportion of LaBonte's back condition that was due to his accidental personal injury.

Electrical General is mistaken in arguing that Reeves, 204 Md. at 582, 105 A.2d at 239, bars an employer's further liability for any worsening of an employee's medical condition after a finding of a subsequent intervening event. In Reeves, id. at 583, 580-81, 105 A.2d at 240, 239, this Court held that an employer was not liable for permanent partial disability benefits where an employee suffered a shoulder dislocation in the course of

- 30 -

employment, and a surgeon operated on the employee's shoulder, which became partially immobilized as a result; *i.e.*, the surgery constituted a subsequent intervening event. Critical to this Court's conclusion were the circumstances that the employee's physician testified that the employee's work-related shoulder dislocation did not cause his shoulder's partial immobility, and did not testify that the employee's shoulder dislocation necessitated the surgery. See id. at 582, 105 A.2d at 239. In short, there was no evidence to support the jury's finding that the employee's work-related shoulder dislocation had caused his shoulder's partial immobility; to the contrary, the evidence indicated that the subsequent surgery was the sole cause of permanent partial disability. See id. at 582-83, 105 A.2d at 239-40. And, as this Court observed, Reeves was not a case involving the reopening of a prior claim for injury upon the claimant's condition's worsening. See id. at 582, 105 A.2d at 239. In sum, Reeves did not involve a petition to reopen based on worsening of a medical condition, and this Court's holding in Reeves merely establishes the proposition that a causal connection between an accidental personal injury and a disability is required for an initial award of permanent partial disability benefits.

In contrast to Reeves, in this case, ample evidence supports the jury's finding that LaBonte's accidental personal injury, not the incident with the law enforcement officer, caused the worsening of LaBonte's back condition. As a result of his accidental personal injury, LaBonte was mostly either not working, or working in a light duty position, for more than two years; by contrast, as a result of the incident with the law enforcement officer, LaBonte missed less than a month from work. Whereas LaBonte underwent back surgery as a result of his accidental personal injury, medication and exercise were

- 31 -

prescribed as a result of the incident with a law enforcement officer. Dr. Franchetti, LaBonte's medical expert, examined him on two occasions; the first examination occurred approximately five months after the incident with the law enforcement officer, and the second examination occurred more than five years after the incident. As a result of the first examination, Dr. Franchetti determined that LaBonte had 43% "whole person impairment due to" his accidental personal injury. After the second examination, Dr. Franchetti determined that LaBonte's whole person impairment had increased to 53%. At deposition, Dr. Franchetti testified that the incident with the law enforcement officer did not result in any permanent worsening of LaBonte's back condition, and that LaBonte's back condition was causally related to his accidental personal injury. These circumstances more than support the jury's finding that LaBonte's accidental personal injury was the cause of his back condition's worsening—*i.e.*, that the incident with the law enforcement officer was not a cause of LaBonte's back condition's worsening.

In sum, the Commission erred in concluding that its March 30, 2007 Order and its October 15, 2007 Award of Compensation were dispositive as to the issue of whether LaBonte's accidental personal injury had caused a worsening of his back condition. Where an employee seeks reopening of a workers' compensation claim based on the worsening of a medical condition, the employer may be liable for permanent partial disability benefits for the portion of any subsequent worsening of the employee's medical condition that is caused by and reasonably attributable solely to the accidental personal injury or occupational disease. In other words, in the event that the Commission has apportioned liability for an employee's permanent partial disability between an accidental personal

injury or occupational disease, and a subsequent intervening event, and the employee's condition has worsened, the Commission may determine the extent to which the worsening was caused by and was reasonably attributable solely to the accidental personal injury or occupational disease, and further award permanent partial disability benefits. And, where an employee moves to reopen a workers' compensation claim, the existence of a subsequent intervening event finding does not, *per se*, preclude an employer's liability for workers' compensation benefits. Rather, an employer may be liable for workers' compensation benefits where the employee demonstrates a worsening of his or her medical condition was caused by an accidental personal injury or occupational disease. As such, the circuit court did not err in submitting to the jury the question of how much, if any, of LaBonte's back condition's worsening was caused by his accidental personal injury. The jury's determination that LaBonte's accidental personal injury was the cause of his back condition's worsening is amply supported by the evidence adduced at trial.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COSTS.**